Jimmy Max WRIGHT and Fairy Lynn Wright Appellants,

v.

E.P. OPERATING LIMITED PARTNERSHIP et al, Appellees.

No. 11–96–00261–CV.

Court of Appeals of Texas, Eastland.

Oct. 1, 1998.

Rehearing Overruled Nov. 25, 1998.

Donald M. Hunt, Gary M. Bellair, Carr Hunt Wolfe & Joy, Attorneys At Law, Lubbock, Maxie L. Houser, Attorney At Law, Corpus Christi, for Appellants.

Rick Mayer, C. Clint Adams, Dallas, Charles E. Jones, Charles E. Jones Jr. & Associates, Attorneys At Law, Rod E. Wetsel, Steakley & Wetsel, Attorneys At Law, Sweetwater, for Appellees.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

## OPINION

ARNOT, Chief Justice.

This appeal arises from a declaratory judgment action brought to quiet title to the mineral estate under five tracts of land in Nolan County. Appellants, Jimmy Max Wright and Fairy Lynn Wright, originally owned both the surface and the mineral estate. The Wrights now claim title to all of the mineral estate by virtue of a reservation and exception contained in a deed they executed to appellees' predecessor in title. Appellees are: E.P. Operating Limited Partnership; Enserch Exploration, Inc.; Enserch Corporation; The Jay Etheredge Trust; Jay Stanley Etheredge; John Oscar Martin; Helen C. Martin; Randall Bankhead; Mary Elizabeth Bankhead; Gaines H. Price; The Callie Michelle Price Trust; Eugene Fullwood; Mary Letha Fullwood; Clifford C.

Etheredge, Sr.; and Hilda Etheredge. They are the successors in title to the five individual tracts, having made individual purchases from the subsidiary of a bank which had foreclosed its deed of trust lien and acquired the property by substitute trustee's deed. The Wrights acknowledge that the foreclosure of the deed of trust lien also foreclosed their mineral interest, but they claim that the recitations in other instruments filed for public record referring to the Wrights' prior reservation of minerals establishes, as a matter of law, that the parties intended for the Wrights to retain their minerals. Utilizing well-established rules for construction of instruments, we affirm the judgment of the trial court.[1]

Although there are a number of transactions and parties involved, the chain of title in this case is not complicated. The Wrights owned and operated a farming operation on five different tracts of land in Nolan County. In 1981, the Wrights executed a deed of trust to Mercantile Bank pledging the surface and the minerals under all five tracts to secure one promissory note. About a year later, the Wrights agreed to sell the farming operation to Floyd Oliver, Layton Oliver, and O–O, Incorporated.

Under an assumption agreement dated May 4, 1982, the Olivers agreed to assume the Wrights' obligations to Mercantile Bank, and the Wrights agreed to transfer the farming equipment and the surface estate of the five tracts to the Olivers. Mercantile Bank agreed not to foreclose upon the mineral estates and to release the Wrights from all liability. The assumption agreement contained the following recitation:

> Notwithstanding anything herein or in any other documents or instruments executed in connection herewith to the contrary, the [Wrights] shall not convey any rights, titles or interests in and to the mineral estate of the Real Property, which mineral estate shall be reserved to the [Wrights] in any deed conveying the Real Property by the [Wrights] to the [Olivers].

This assumption agreement was not filed for public record. In their deed to the Olivers, dated May 21, 1982, the Wrights made the following exception:

> Grantors do hereby *except and reserve* unto themselves, their heirs, successors and assigns *all of the oil, gas and other minerals* on, in and under all of the land described in this instrument, together with the right of ingress and egress for the purpose of exploring for, drilling for, producing and marketing said oil, gas and other minerals.[2] (Emphasis added)

1. In *Lee M. Bass, Inc. v. Shell Western E & P, Inc.*, 957 S.W.2d 159 (Tex.App.—San Antonio 1997, no writ), the court recited the appropriate standards of review:

   In reviewing a summary judgment on appeal, we must determine whether the movant met its burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *J.M. Huber Corp. v. Santa Fe Energy Resources, Inc.*, 871 S.W.2d 842, 845 (Tex.App.—Houston [14th Dist.] 1994, writ filed). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in the non-movant's favor. *Id.* When both parties file motions for summary judgment and one such motion is granted, we must review all of the issues presented and, if reversible error is found, render such judgment as the trial court should have rendered, including rendering judgment for the other movant. Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988); Santa Fe Energy Co. v. Baxter, 783

   S.W.2d 643, 645 (Tex.App.—Houston [14th Dist.] 1989, writ denied).
      Summary judgment is appropriate in cases involving the interpretation of an unambiguous document. *Bishop v. National Loan Investors, L.P.*, 915 S.W.2d 241, 245 (Tex.App.—Fort Worth 1995, writ denied); *Tri County Service Co. v. Nationwide Mutual Ins. Co.*, 873 S.W.2d 719, 721 (Tex.App.—San Antonio 1993, writ denied).

2. The deed also states:
   The excepted and reserved interest is subject to any valid, recorded oil and gas and other mineral lease or leases which cover this interest, but covers and includes all delay rentals and royalties, and any other rights and payments due or to become due or which may hereafter be payable or paid under the terms of said lease or leases to the lessor therein, his heirs, successors and assigns, insofar as said lease or leases cover all or any part of the land described in this deed. Upon termination of any/or all of such leases as to any land described herein, the interest of said lessee, his heirs, successors and assigns, shall revert to grantors herein, their heirs, successors and

The Wrights did not receive a partial release of the deed of trust lien covering the reserved minerals from Mercantile.

As further evidence of the Wright's exercise of ownership over the minerals, the summary judgment evidence shows that the Wrights subsequently conveyed the minerals under the five tracts to Elmer O. Mahon, Fairy Lynn Wright's father, by warranty deed in June of 1982. Mr. Mahon died in 1994, and the Wrights reacquired the mineral interests by inheritance.

Approximately five years after assuming the loan, the Olivers defaulted on their obligations. On June 3, 1987, Mbank Dallas, successor in interest to Mercantile Bank, foreclosed its deed of trust lien on the five tracts and received a substitute trustee's deed.[3] The trustee's deed did not exclude the minerals, did not refer to the prior reservation of the minerals by the Wrights, and did not mention the assumption agreement. On October 29, 1987, Mbank conveyed the five tracts of land to its subsidiary, Oregon, Inc. Again, no reference to the reservation of the mineral estate was made.

From October 1987 to January 1988, Oregon, Inc. made five separate conveyances of the property to five different grantees, who are appellees herein. Each special warranty deed contained the following language: "This conveyance is made subject and subordinate to ... (the "Permitted Exceptions") described in Exhibit "B" attached. Under a heading of "Permitted Exceptions," Exhibit "B" contained the following language:

> *Any and all valid and subsisting* leases, *reservations, severances of any and all oil, gas and minerals in, on, and under the Property which are presently of record* and which affect or relate to the Property: *including, without limitation, that certain reservation of all oil, gas and minerals in, on and under the property reserved by Jimmy Max Wright, et al in Warranty Deed to Floyd Oliver, et al, dated May 21, 1982,* recorded in Volume 255, Page 615, Deed Records, Nolan County, Texas. (Emphasis added)

This dispute arose when appellees granted leases to conduct seismic operations on their lands and filed an affidavit of ownership as to the mineral estate under their respective surface estates. In a declaratory judgement action, the court was asked to decide who owned the minerals. After this dispute arose, Oregon, Inc. executed a quitclaim deed conveying any interest it had in the minerals under the five tracts to the Wrights.

The Wrights acknowledge that Mbank inadvertently foreclosed on their mineral interest when it foreclosed on its deed of trust lien. The Wrights argue that the trial court erred in granting a summary judgment holding that title to the minerals is vested in appellees because (1) Oregon specifically reserved the mineral interest in each special warranty deed and (2) Oregon's deed revived the prior mineral exception.[4]

---

assigns. Notwithstanding anything herein to the contrary, the Grantors, their heirs, successors, and assigns shall pay reasonable damages to the grantees, their heirs, successors, and assigns for any damage done to the surface estate of the land herein conveyed as a result, direct or indirect, of any activities of Grantors, their heirs, successors, and assigns, undertaken with respect to the mineral estate herein reserved.

3. The deed of trust instrument was not included in the summary judgment evidence.

4. See *Ellis v. Waldrop*, 656 S.W.2d 902, 904 (Tex.1983), in which the court observed:

In *A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145 (Tex.1982), we reaffirmed the long-standing general rule in Texas that in order to recover damages for the disparagement of title, the plaintiff must allege the loss of a specific sale. Furthermore, this Court has established that a cause of action to recover damages for the failure to release a purported, though not actual, property interest is a cause of action for slander of title. No Texas case has ever awarded damages under the rubric "cloud on title." A suit to remove a cloud from title is a suit for a specific, equitable remedy. (Citations omitted)

See *Sadler v. Duvall*, 815 S.W.2d 285, 293 n. 2 (Tex.App.—Texarkana 1991, writ den'd), in which the court stated:

Slander of title is defined as a false and malicious statement made in disparagement of a person's title to property which causes him special damage. A cloud on title exists when an outstanding claim or encumbrance is shown which, on its face, if valid, would affect or impair the title of the owner of the property. It is a suit for a specific equitable remedy. (Citations omitted)

Also see *Exploracion De La Estrella Soloataria Incorporacion v. Birdwell*, 858 S.W.2d 549, 553

In their first amended petition, the Wrights sued for a declaratory judgment to establish that they were the mineral owners and for damages arising from the slander of title (for executing and filing an affidavit of ownership and executing an agreement to allow seismic operations and options to grant oil and gas leases), from the unlawful subsurface trespass, and from the creation of a cloud on their title by negligently researching the title and leasing the minerals. The Wrights urged that these acts and omissions were done with such conscious indifference as to amount to gross negligence. Appellees filed a counterclaim asking for a declaratory judgment, for the removal of the cloud on their title, and for damages for slander of title.

■ As this court observed in *Sun Exploration and Production Company v. Pitzer*, 822 S.W.2d 294 (Tex.App.—Eastland 1991, writ den'd), Texas does not recognize a cause of action for negligence in leasing. Conse-

quently, without negligence, there can be no cause of action for gross negligence.[5]

We note that the Wrights did not plead or seek reformation of any instrument and did not plead fraud, estoppel, mutual mistake, ambiguity,[6] or any cause of action that would allow the offer of extraneous evidence to explain the language in the Oregon deeds. Consequently, the trial court was called upon to interpret the Oregon deeds and determine as a matter of law the effect of their language and the estate they passed.[7]

■ In construing a deed, the court endeavors to carry into effect the intent of the parties as expressed therein. It is not the intent that the parties may have had but failed to express in the instrument, but it is the intent that is expressed by the instrument. *Pierson v. Sanger*, 93 Tex. 160, 53 S.W. 1012 (Tex.1899); *Harlan v. Vetter*, 732 S.W.2d 390 (Tex.App.—Eastland 1987, writ ref'd n.r.e.).[8]

---

(Tex.App.—Eastland 1993, no writ), in which this court said:

> A suit to cancel an oil and gas lease has been described as a suit to quiet title. Although he must base his action on the strength of his own title, the plaintiff in a suit to quiet title does not have to prove superior right to the property by tracing his title to the sovereignty. (Citations omitted)

**5.** See *Transportation Insurance Company v. Moriel*, 879 S.W.2d 10 (Tex.1994); *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322 (Tex.1993); *Williams v. Steves Industries, Inc.*, 699 S.W.2d 570 (Tex.1985).

**6.** Absent pleadings and allegations of ambiguity, the document will be construed based on the express language used within the four corners of the instrument and not on extraneous writings. *Henderson v. Parker*, 728 S.W.2d 768 (Tex.1987); *Odeneal v. Van Horn*, 678 S.W.2d 941 (Tex.1984); *Shriner's Hospital for Crippled Children of Texas v. Stahl*, 610 S.W.2d 147 (Tex.1980); and *Frost National Bank of San Antonio v. Newton*, 554 S.W.2d 149 (Tex.1977).

**7.** In *Patrick v. Barrett*, 734 S.W.2d 646 (Tex. 1987), the court stated the distinctions between an exception and a reservation. It is manifest that an exception does not pass title itself; instead it operates to prevent the excepted interest from passing at all. *Pich v. Lankford*, 157 Tex. 335, 302 S.W.2d 645, 648 (Tex.1957). On the other hand, a reservation is made in favor of the grantor, wherein he reserves unto himself royalty interest, mineral rights, and other rights. *Benge*

*v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166, 167–68 (Tex.1953).

**8.** In *Alford v. Krum*, 671 S.W.2d 870 (Tex.1984), overruled on other grounds by *Luckel v. White*, 819 S.W.2d 459 (Tex.1991), the court recited the long-standing rules of interpretation and construction controlling the disposition of this cause:

> The primary duty of the courts in interpreting a deed is to ascertain the intent of the parties. *Terrell v. Graham*, 576 S.W.2d 610, 612 (Tex. 1979); *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341, 344 (1957). This rule of construction, however, must be modified with the restriction that it is not the intention that the parties may have had but failed to express in the instrument, but it is the intention that is expressed by said instrument. That is, the question is not what the parties meant to say, but the meaning of what they did say. *Canter v. Lindsey*, 575 S.W.2d 331, 334 (Tex.Civ. App.—El Paso 1978, writ ref'd n.r.e.); *Davis v. Andrews*, 361 S.W.2d 419, 423 (Tex.Civ.App.— Dallas 1962, writ ref'd n.r.e.). Finally, "[w]e must construe this language as it is written and we have no right to alter it by interpolation or substitution." *Dahlberg v. Holden*, 150 Tex. 179, 238 S.W.2d 699, 701 (1951).
>
> In seeking to ascertain the intention of the parties, the court must attempt to harmonize all parts of a deed, since the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617, 620 (1954). On the other hand, we realize that irreconcilable conflicts do exist;

■ The Wrights urge that the language in the Oregon deeds to the individual appellees (referring by recital to the prior mineral reservation by the Wrights in their deed to the Olivers) had the effect, as a matter of law, of excluding the minerals from the conveyance. We disagree. The recitals purport to state why the exception was made, not to make an exception or reservation of the mineral interest. See *Pich v. Lankford*, 157 Tex. 335, 302 S.W.2d 645 (Tex.1957). The Wrights recognize that Mbank inadvertently foreclosed on their mineral interest. Consequently, Oregon was vested with full title to both the surface and mineral estates. The language stating that the conveyances were made *subject to any and all reservations presently of record including without limitation that property reserved by* the Wrights does not reserve any mineral interest in Oregon's predecessors in title, but rather recognizes that reservations have been made in the past and are in the chain of title. This language is more in the form of limiting the warranty than reserving an interest.

The Wrights argue that there is a material question of fact as to the parties' intent to convey the minerals. The Wrights would direct the court's attention to the other instruments of record as well as the deemed admissions and other evidence submitted for the purposes of summary judgment evidence. The affidavit of Mbank's vice president, who negotiated the sale, stated that each person with whom the bank negotiated a sale from Oregon was told that no mineral interest was to be conveyed. Subsequent conveyances by appellees recognized that no mineral interest was conveyed. The Wrights assert that, by deemed admissions, the summary judgment evidence shows that the grantees from Oregon were told that they would not receive any of the minerals. Yet, under the pleadings in this case, this court is constrained in its interpretation to review only the deed from Oregon. As a matter of law, a reference by recital to a mineral interest that has previously been foreclosed does not in effect reserve that interest from the conveyance.

Although the parties did not intend to convey the minerals, we must ascertain what the language of the instrument says, not what the parties meant for it to say.

Appellees would have us read the words "valid and subsisting" in connection with the words "leases or reservations or severances." The Wrights would have us ignore these modifiers. We understand the plain meaning of these modifiers to be that, if there is an oil and gas lease in effect at the time of the conveyance, then the property conveyed is subject to the burden of that lease. Whether the adjectives "valid and subsisting" modify the words "severances" or "reservations" does not matter. Under either interpretation, clearly the recital is to a mineral estate that has been foreclosed, the titles have been merged, and the interest is no longer in existence. The Wrights next call the court's attention to the language "including without limitation." However, this is language of a limitation to warranty and does not create or convey any mineral interest.

As a matter of law, the deeds from Oregon to appellees did not reserve the mineral estate by reference to a mineral interest that was no longer in existence. Consequently, the quitclaim deed from Oregon was ineffective to transfer title to the minerals because Oregon did not own those minerals when the quitclaim deed was executed.

■ Next, we address the Wrights claim that, by their subsequent actions, appellees have revived the mineral interest. The subsequent execution of a formal document, even to a third person, which expressly recognizes in clear language the validity of a lifeless mineral deed or lease has been held to give it life. The effect of invoking the "revivor" doctrine is the granting of a new estate in land. See *Loeffler v. King*, 149 Tex. 626, 236 S.W.2d 772 (Tex.1951).

■ The Wrights urge that, by accepting Oregon's deeds excepting the mineral reservation that had previously been foreclosed, appellees have effectively revived the

therefore, when it is impossible to harmonize internally inconsistent expressions of intent, the court must give effect to the "controlling language" of the deed and not allow ambigui-

ties to "destroy the key expression of intent" included within the deed's terms. *Texas Pacific Coal & Oil Co. v. Masterson*, 160 Tex. 548, 334 S.W.2d 436, 439 (1960).

Wrights' mineral interest. We disagree. The doctrine of revivor is not applicable in this case. In cases of revivor, there is an acceptance under an oil and gas lease (such as a lease royalty payment of a lease that has lapsed) in addition to an instrument in writing (such as a ratification of a unit or pooling agreement). As such, revivor has the attributes of estoppel and must be pleaded under TEX.R.CIV.P. 47 or 94. The doctrine of revivor was not pleaded by the Wrights. There were no fact issues presented by the summary judgment evidence to show that the subsequent grantees have made a formal recognition of the validity of the Wrights' prior mineral reservation.

In their final point of error, the Wrights urge that they should recover attorney's fees because they should have prevailed on their declaratory judgment action. Because the trial court did not err in granting judgment for appellees, this point is overruled. All of the Wrights' points have been considered, and they are overruled.

The judgment of the trial court is affirmed.