

In The

# Eleventh Court of Appeals

_____

## No. 11-07-00379-CV

_____

### CLARENCE O. BRIGHT AND INTERVENOR CLARENCE D. BRIGHT, Appellants

### V.

### FLOY HUBERT JOHNSON AND SHIRLEY A. JOHNSON, Appellees

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CV28227**

### O P I N I O N

Floy Hubert Johnson and Shirley A. Johnson filed this suit against Clarence O. Bright to reform a deed dated May 2, 2002, by which they conveyed thirty-three acres to Clarence O. Bright. They alleged that the sales contract between the parties called for all minerals to be reserved or retained by the Johnsons; but, through a scrivener's error, the warranty deed failed to reserve or retain the minerals. Clarence O. Bright acknowledged that he had agreed that the Johnsons would keep all the minerals and that, even at closing, he still believed they had.

Clarence O. Bright's son, Clarence Dwaine Bright, intervened in the suit. He testified that he purchased one-half of what his father had purchased from the Johnsons. Clarence Bright had paid $59,400 to the Johnsons for the thirty-three acres, and Dwaine Bright paid $30,000 for the undivided one-half interest. Clarence Bright and Dwaine Bright executed a document, which was not recorded, but which was dated June 13, 2003, to reflect Dwaine Bright's acquisition from Clarence. After the Johnsons filed this suit and a notice of lis pendens, Clarence Bright executed and caused to be recorded two "corrected" deeds without warranty conveying to Dwaine Bright one-half of Clarence Bright's interest in the thirty-three acres. In an amended petition, the Johnsons also sought a declaratory judgment that Dwaine Bright was not a bona fide purchaser of that interest.

The trial court granted summary judgment to the Johnsons on their reformation claims and reformed their deed to show that they retained all of the minerals that they owned at the time of the conveyance. The trial court also granted summary judgment to the Johnsons on Dwaine Bright's claim that he was a bona fide purchaser. Additionally, the trial court denied Clarence and Dwaine Bright's motion for summary judgment. In the Brights' first two issues, they argue that the trial court should have denied the Johnsons' motion for summary judgment and should have granted their own motion. In their third issue, they contend that the trial court erred in denying Dwaine Bright's recovery of his attorney's fees. In the alternative fourth and fifth issues, they contend that there were fact issues that precluded summary judgment and that the trial court erred in its reformation of the May 2002 deed. Overruling all of the Brights' issues, we modify and affirm.

*Standard of Review*

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The parties filed traditional motions for summary judgment. A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). When reviewing a traditional summary judgment, the appellate court considers all the evidence and takes as true evidence favorable to the nonmovant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). The appellate court "must consider whether reasonable and fair-minded jurors could differ

in their conclusions in light of all of the evidence presented" and may not ignore "undisputed evidence in the record that cannot be disregarded." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755, 757 (Tex. 2007). When competing motions are filed and one is granted and the other is denied, the reviewing court must review the summary judgment evidence presented by both sides and determine all questions presented. The reviewing court should then render such judgment as the trial court should have rendered. *Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

*The Farm and Ranch Contract of Sale*

In their motion for summary judgment, the Johnsons argued that in their Farm and Ranch Contract of Sale (the Sales Contract), the parties agreed that the Johnsons would reserve all of the minerals. Therefore, a mutual mistake occurred when the person preparing the deed to Clarence Bright did not reserve or retain the minerals on behalf of the Johnsons. Thus, a scrivener's error occurred and the deed should be reformed.

The Brights argued below, and argue here, that the Sales Contract did not reserve the minerals to the Johnsons; the Sales Contract "only excepted from the Johnsons' conveyance those minerals 'of record.'" They interpret the Sales Contract to mean that the Johnsons were only excepting from their conveyance two prior conveyances or reservations of mineral interests that appeared of record in the chain of title. The Brights refer to two outstanding mineral and/or royalty interests owned by third parties at the time: an interest reflected in an instrument dated March 25, 1949, executed by N.M. Colwick and wife to Stanley Giesecke and Nettie Giesecke and an interest described in an instrument dated January 21, 1947, executed by A.P. McCrite and wife to Stanley Giesecke. The Brights take the position that these two interests were the only recorded interests properly excepted from the conveyance and warranty by the Johnsons in the Sales Contract.

The parties made written additions to fill in the blanks of the printed Sales Contract. In paragraph 2, they described the property as being thirty-three acres out of the H.S. Stauffer Survey in Erath County. The relevant part of paragraph 2 then stated the following:

> All property sold by this contract is called the "Property." The Property will be conveyed subject to the following exceptions, *reservations*, conditions and restrictions (if none, insert "none"):

A. Minerals, Royalties, and Timber Interests:

(1) Presently outstanding in third parties: None ["None" written in]

(2) To be additionally *retained by Seller*: *All of Record* ["All of Record" written in] (emphasis added)

The parties followed the instructions and wrote "None" in paragraph 2(A)(1) and wrote "All of Record" in paragraph 2(A)(2). Had they meant for the Johnsons not to retain any minerals, royalties, and timber interests, they would have written "None" in paragraph 2(A)(2). Apparently, they did not know of the third-party Giesecke interests when they wrote "None" in paragraph 2(A)(1). Floy Johnson testified by deposition that the title company's attorney prepared the deed. That attorney did list the Giesecke interests as exceptions in the deed.

We agree with the Johnsons' reading of the Sales Contract. As we have said, the Sales Contract contains the following language: "The Property will be conveyed subject to the following exceptions, reservations, conditions and restrictions (if none, insert "none")." That language is followed by these terms: "A. Minerals, Royalties, and Timber interests: (1) Presently outstanding in third parties." The parties inserted the word "None." That language is then followed immediately by "(2) To be *additionally retained* by Seller" (emphasis added). The parties wrote the words "*All* of Record" (emphasis added). As to mineral leases and surface leases, the parties wrote in "None." Then, as to easements, the parties wrote the words "*As* of Record" (emphasis added). This agreement might not be a model of clarity, but we believe that it reflects the intent of the parties that, as to minerals, there are no outstanding interests in third parties but that the Johnsons are *retaining* all of record. The earlier use of the words "subject to" apply to those interests outstanding in third parties, such as easements "*As* of Record" (emphasis added). The words used when referring to the remainder of the mineral interests are "additionally *retained* by Seller" (emphasis added). The careful title examiner or scrivener should know that the Johnsons were *retaining* all of the minerals of record and that the conveyance as to other matters was to be made subject to those other matters.

We note that, during the title examination, the examiner apparently discovered outstanding mineral interests in third parties that were not shown in the sales contract; these interests were specifically excepted from the conveyance and warranty in the deed. The two Giesecke interests

4

should have been listed as exceptions in paragraph 2(A)(1). Paragraph 2(A)(2) provided what was to be retained by the Seller (the Johnsons). At the time of the Sales Contract, the Johnsons owned all of the minerals except for the two interests owned by Giesecke. The Johnsons did not hire an attorney or do a title search before they entered into the Sales Contract to sell their thirty-three acres for $59,400. We understand that, to avoid the *Duhig*[1] rule, a deed should have a reservation by the grantor and a "subject to" clause to protect the reservation. But here, we are ascertaining the intent of the Johnsons and the Brights as expressed in their Sales Contract. Neither side retained an attorney.[2] Both parties agreed that the Johnsons were to keep all of the mineral interests that they then owned. It is not surprising that they simply wrote in that the Johnsons were "retaining" all the minerals that they owned "of record."

Assume that the parties correctly had included the two outstanding mineral interests in paragraph 2(A)(1) of the contract. It would then be clear that the later conveyance was to be *subject to* the outstanding mineral interests and that, additionally, the Johnsons were to *retain* all of the other minerals.

Even if we were not to consider the testimony of the parties regarding the mineral interests, as the dissent[3] suggests we should not do, we believe that the Sales Contract on its face shows that Clarence Bright was to receive no interest in the minerals; they were to be retained by the Johnsons.

We are aware, as suggested by the dissent, that oftentimes the terms "reservation" and "exception" are used interchangeably. *(See dissent*, note 4). But, that depends on the context in which the terms are used. Here, the contract goes further and contains not only the language "reserved," it also contains the words "additionally *retained*" in reference to the minerals. The Brights have confused "exceptions" and "reservations." The parties, under paragraph 2(A)(2), listed "All of Record" that would have excepted the two interests owned by Giesecke. However, the interests owned by Giesecke would not have been "retained" by the Johnsons as the seller. They

---

[1] *Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878 (Tex. 1940).

[2] A careful attorney would have listed in paragraph 2 after "[t]he following property is not included" the exceptions of the Giesecke interests and the retention by the Grantors of the minerals and then listed them again in paragraphs 2(A)(1) and (2). Here, the parties inserted "N/A" after "[t]he following property is not included."

[3] *Bright v. Johnson*, No. 11-07-00379-CV (Tex. App.—Eastland December 10, 2009, no pet. h.) (dissenting opinion).

5

would have been an exception to the property conveyed. It is clear from the record and the briefing that the parties were not using the words "reservation" and "exception" interchangeably; they used the words "reserved" and "retained" in such a manner that no minerals were to be conveyed to the Brights. Here, the Johnsons "retained" or "reserved" the minerals (that they owned of record) to themselves in paragraph 2(A)(2) of the Sales Contract. The confusion between exceptions and reservations permeates the Brights' argument.

An exception does not pass title itself; instead, it operates to prevent the excepted interest from passing at all. The primary distinction between a reservation and exception is that a reservation must always be in favor of and for the benefit of the grantor. *Patrick v. Barrett*, 734 S.W.2d 646, 647 (Tex. 1987); *Pich v. Lankford*, 302 S.W.2d 645, 648-50 (Tex. 1957). The Giesecke interests should have been listed as exceptions in paragraph 2(A)(1). A reservation is made in favor of the grantor where he reserves to himself royalty interests, mineral rights, and other rights. *Benge v. Scharbauer*, 259 S.W.2d 166, 167-68 (Tex. 1953).[4] Paragraph 2(A)(2) was the place for that reservation in their Sales Contract. The Johnsons would not have reserved to themselves the interests owned by Giesecke. The Brights' argument that the wording "retained by Seller: All of Record" meant that the Johnsons only reserved to themselves Giesecke's interests is not logical in view of paragraphs 2(A)(1) and 2(A)(2).

The Brights' confusion is demonstrated by their reliance on this court's opinion in *Wright v. E.P. Operating L.P.*, 978 S.W.2d 684 (Tex. App.—Eastland 1998, pet. denied). That case involved an exception and is not applicable. The Wrights had executed a deed of trust to Mercantile Bank pledging the surface and minerals to secure a promissory note. They then sold the land to the Olivers who agreed to assume payment of the note. However, the Wrights failed to secure from Mercantile Bank a partial release of the minerals from the deed of trust. Five years later, the Olivers defaulted, and the successor bank foreclosed on the deed of trust lien and received a substitute trustee's deed. The Wrights acknowledged that the bank's foreclosure also foreclosed their mineral interests, but they argued that the language in the deeds from the bank's subsidiary to the individual appellees had

---

[4]An exception is no more than an exception from the grant; it can operate to the benefit of the grantor to the extent that ownership in the excepted interest is vested in the grantor and is not outstanding in another person. *Patrick*, 734 S.W.2d at 648 n.1; *Pich*, 302 S.W.2d at 650.

the effect of excluding the minerals from the conveyance. The language in the deeds made the conveyances "subject to" certain exceptions referred to as "Permitted Exceptions." These permitted exceptions included the prior mineral reservation by the Wrights in their deed to the Olivers. We held that a reference by recital to mineral interests that had previously been foreclosed did not reserve those interests to the bank's subsidiary from the conveyance. Because the deeds from the subsidiary to appellees did not reserve the mineral estate by a reference to an exception of a mineral interest that was no longer in existence, a later quitclaim deed from the subsidiary to the Wrights was ineffective to transfer title to the mineral interests back to the Wrights. The bank's subsidiary had limited its warranty by the exception; it had not retained the mineral interests that no longer existed. We further held that subsequent actions by appellees in that case had not revived the mineral interests in the Wrights. In contrast, the case now before us involves a retention of the minerals by the Johnsons in the Sales Contract, not an exception.

Perhaps more importantly, as quoted by the dissent, the language in the deeds in *Wright* provided that the conveyances were made "subject to" the various reservations. *Wright*, 978 S.W.2d at 688. The language in the case before us is different. The Sales Contract under review here provided that there were certain things to which the conveyance would be subject, as in *Wright*, but here, unlike *Wright*, the Johnsons *additionally* were to retain all of the minerals of record.

The dissent asserts that the majority is improperly relying upon extrinsic evidence because "[t]he Johnsons do not ask this court to reform the underlying purchase agreement." Again, it is apparent from the Johnson's position in the trial court as well as here that, because they believe the Sales Contract correctly reflects the agreement of the parties, the Johnsons have sought to reform the deed so that it, too, might properly conform to the agreement of the parties. We point out that in *Wright* there was no claim for reformation due to mutual mistake or otherwise. In *Wright*, we were careful to note that "the Wrights did not plead or seek reformation of any instrument and did not plead fraud, estoppel, mutual mistake, ambiguity, *or any cause of action that would allow the offer of extraneous evidence to explain the language in the . . . deeds.*" *Wright*, 978 S.W.2d at 687 (emphasis added, footnote omitted). Therefore, what the *Wright* court was called upon to do was to interpret instruments and determine the effect of the language in them. Unlike *Wright*, the Johnsons' lawsuit against Clarence Bright was one for reformation of a deed due to mutual mistake.

7

The dissent cites to *Wright* as support for the position that we have wrongfully and differently defined the phrase "all of record." However, we note again that *Wright* did not involve a suit for reformation. We also note again that *Wright* was a case involving the use of the phrase "subject to" rather than "additionally retained" or "reserved" when referring to the interest under review.

It has also been noted that the Johnsons have made no attack upon the merger clause contained in the sales contract. It seems to us that there has been no attack on the merger clause because appellees are not attacking the sales contract; they want to reform the deed to comport with it. We are not disregarding the merger clause but, rather, believe that the contract explicitly contains the agreement of the parties and that the merger clause is not relevant to the claims made by the Johnsons in this lawsuit.

A party is entitled to reformation of a deed when it proves that it reached an agreement with the other party but the deed does not reflect the true agreement due to a mutual mistake. *Thalman v. Martin*, 635 S.W.2d 411, 413 (Tex. 1982); *Ramirez v. Flores*, 2006 WL 927295, No. 04-05-00075-CV (Tex. App.—San Antonio Apr. 12, 2006, no pet.) (mem. op.); *Hatch v. Williams*, 110 S.W.3d 516, 522 (Tex. App.—Waco 2003, no pet). To reflect the agreement of the parties, the supreme court in *Thalman* reformed both deeds that had been exchanged. In *Ramirez*, the sales contract reflected that the Ramirezes agreed to convey the surface estate and 1/16 of the mineral estate; the court noted that the parties agreed that the Ramirezes retained the remaining 15/16 of the mineral estate. By a mistake of the title company, the warranty deed transferred to Flores the surface estate and the entire mineral estate. The court held that the warranty deed was properly reformed to reflect the true agreement of the parties. And in *Hatch*, both parties testified that they had agreed that Williams was to convey only the 87.2-foot tract, not the entire tract. However, the attorney who handled the transaction testified that his office had erroneously attached the wrong property description to the documents; hence, the deed transferred the entire tract. The Waco court found that the deed was properly reformed by the trial court to reflect their agreement. Like these cases, the case before us involved a mutual mistake and a scrivener's error.

The Brights argue that the mistake in the deed by the grantor is a unilateral mistake, not a mutual mistake, citing *Lathem v. Richey*, 772 S.W.2d 249, 254 (Tex. App.—Dallas 1989, writ denied). *Lathem* involved the question of whether the grantor had filed his suit to reform the deed

8

within the four-year statute of limitations. In holding that limitations precluded his suit, the court found that Lathem had ample time to learn that the deed did not contain the mineral reservation. It is evident from the opinion that, had Lathem filed suit before limitations had run, his suit for reformation of a deed due to mutual mistake of the grantee and grantor would have been heard. The *Lathem* case is not applicable. Here, the Johnsons filed their suit for reformation within the limitations period.

The Brights cite *Estes v. Republic Nat'l Bank of Dallas*, 450 S.W.2d 397 (Tex. Civ. App.—Dallas 1969), *aff'd*, 462 S.W.2d 273 (Tex. 1970), and *Glasgow v. Hall*, 668 S.W.2d 863 (Tex. App.—Austin 1984, writ ref'd n.r.e.), for the proposition that a party's failure to see that the words in his contract express his intentions constitutes such negligence as will bar his right to reform it. That proposition may or may not be applicable in some situations, but the cases do not apply here. In this case, the parties agreed in the Sales Contract that the Johnsons would retain the minerals they then owned of record. The facts in *Estes* and *Glasgow* differed substantially from the facts in this case.

In *Estes*, the evidence showed that Estes had had extensive financial transactions with the bank and had given it many promissory notes. One $30,000 note was secured by a deed of trust that contained a "Mother Hubbard" clause stating that the deed of trust secured all funds advanced to Estes and all other indebtedness owing or that might become owing to the bank. Estes argued that his agreement with the bank was that payment of the $30,000 note would release his farm but that the bank had refused to release the farm. The court found that there was no evidence that the bank had agreed to that provision. The court also held that, even if the bank had agreed, Estes still failed to prove that the failure of the written contract to reflect the true oral agreement was due to fraud, accident, or mutual mistake. That is not the situation here. The Sales Contract reflected the oral agreement of the Johnsons and the Brights. There was no oral agreement that differed from the written contract.

In *Glasgow*, Ken Glasgow entered into an earnest money contract for the purchase of a home from Belle Hall. The parties executed the usual title papers, a note, deed of trust, and warranty deed at closing. Glasgow claimed that he did not see a paragraph in the warranty deed that the grantor reserved the right to adjust the interest rate on the note. The court found that the grantor's

reservation of a right to adjust the interest rate on the note was never discussed before or at the time of closing. There were no findings of fact or conclusions of law requested or filed by the trial court. Unlike the agreement in the Sales Contract in the case before us, there was no evidence of an agreement concerning the interest clause before the deed was executed. Thus, there was no basis for reforming the deed in *Glasgow.*

Appellants have argued that the Johnsons have not challenged the Sales Contract and that failure leads to the demise of the Johnsons' claim. The point is also made by the dissent. However, it is apparent from the Johnsons' arguments that they do not want to reform the contract because they believe that it is the correct statement of the agreement of the parties. The deed is the instrument that is not correct, and the Johnsons seek to reform it so that it might reflect the true agreement of the parties; they make no claim that the sales contract is an incorrect expression of their agreement with Bright.

Where a deed does not follow the parties' agreement, the deed can be reformed. *Thalman*, 635 S.W.2d at 413. The trial court was correct in granting the Johnsons' motion for summary judgment and in denying the Brights' motion for summary judgment.

*Dwaine Bright's Claim*

Dwaine Bright claims that he was a bona fide purchaser for value; therefore, the trial court should have granted his motion for summary judgment that he owned one-half of the surface and minerals. On June 13, 2003, thirteen months after the Johnsons executed the May 2002 deed to Clarence Bright, Clarence Bright entered into a written purchase contract with his son, Dwaine Bright, for Dwaine Bright to purchase an undivided one-half interest in the thirty-three acres (including the mineral rights). Dwaine Bright immediately performed under the purchase contract and fully paid the purchase price. However, Clarence Bright did not give a deed to Dwaine. Instead, the parties in their agreement had stated that no deed would be filed because their names were so similar:

> Both parties are entering into this agreement without deed recording due to names listed as Clarence Bright. Both owner and part owner.

10

The Johnsons' deed to Clarence O. Bright was simply to "Clarence Bright." Dwaine Bright could also be referred to as "Clarence Bright." Dwaine Bright testified as to the reason his father did not give him a deed:

> Because my dad bought it in Clarence Bright. He said, "If anything ever happens, it's already deeded Clarence Bright and you can go down and sell it, whatever you've got to do because your're Clarence Bright, too, you know." And that's – he said that's why he buys stuff as Clarence Bright, in case I ever need to do something with it.

Dwaine Bright acknowledged that the document was a contract, not a deed. He also admitted that he had not looked at his father's May 2, 2002 deed prior to the execution of his purchase agreement.

The Johnsons filed this suit on March 28, 2006, and their notice of lis pendens on July 31, 2006. On September 12, 2006 (effective June 13, 2003), Clarence Bright executed a "Deed Without Warranty" to Dwaine Bright conveying the one-half interest in the thirty-three acres. In August 2007, Clarence Bright executed a "Correction Deed Without Warranty" to correct the September 2006 deed.

Dwaine Bright argues that he was a bona fide purchaser on June 13, 2003, because he fully performed that day, received equitable title, and had no notice of the Johnsons' claim to the minerals. He then argues that his equitable title arose by operation of law without depending on the execution of a deed, citing *Cadle Co. v. Harvey*, 46 S.W.3d 282, 287 (Tex. App.—Fort Worth 2001, pet. denied); *Gaona v. Gonzales*, 997 S.W.2d 784, 787 (Tex. App.—Austin 1999, no pet.); and *Peterson v. Black*, 980 S.W.2d 818, 822 (Tex. App.—San Antonio 1998, no pet.).

These cases are not persuasive. We disagree that Dwaine Bright received equitable or legal title to the minerals pursuant to their 2003 purchase contract.

A subsequent purchaser ordinarily acquires only the rights, interests, or title of his predecessor, and unless he shows himself to be a bona fide purchaser, he can only take such rights that his grantor had. *Hartel v. Dishman*, 145 S.W.2d 865 (Tex. 1940). As a subsequent purchaser, Dwaine Bright would have acquired only the rights of his father unless he was a bona fide purchaser.

The Johnsons are correct that a subsequent purchaser is not a bona fide purchaser if the conveyance is made without warranty. *Woodward v. Ortiz*, 237 S.W.2d 286, 291-92 (Tex. 1951) (purchaser of a quitclaim deed takes with notice of all defects in the title and equities of third

11

persons); *Kidwell v. Black*, 104 S.W.3d 686, 691 (Tex. App.—Fort Worth 2003, pet. denied); *Hall v. Tucker*, 414 S.W.2d 766, 769 (Tex. Civ. App.—Eastland 1967, writ ref'd n.r.e.). Dwaine Bright testified that the June 13, 2003 document was a purchase contract, not a deed. There are no words of warranty in the June 2003 document. There are no words of conveyance, only a statement "I . . . am selling" one-half of the interest as deeded in the Johnsons' May 2002 deed. The phrase "I . . . am selling" may have meant "I have agreed to sell," requiring a deed once the son performed. At best, the document dated June 2003 was a quitclaim deed from Clarence Bright. In addition, Clarence Bright executed two subsequent correction deeds "without warranty." If Clarence conveyed an interest in the thirty-three acres in June 2003, which is doubtful, he conveyed without warranty. To his credit, Clarence Bright has acknowledged consistently that he and the Johnsons agreed that the Johnsons would keep the minerals.

Clarence Bright paid $59,400 for the thirty-three acres, excluding the minerals. Dwaine Bright paid Clarence Bright $30,000 for the undivided one-half interest and understood that amount to be half of what his father had paid the Johnsons. The Johnsons point out that the facts in this case are similar to the facts in *Biggs v. Poling*, 134 S.W.2d 801 (Tex. Civ. App.—Amarillo 1939, writ dism'd judgm't cor.). In *Biggs*, Poling had been offering for sale one-half of his royalty in small units of 1/1536 of his 1/16 royalty at the rate of $100 per unit. He entered into a written contract with Wyrick to convey to Wyrick two units or an undivided 2/1536 of an undivided 1/16 royalty interest for $200. However, the deed conveyed 1,536 units. Wyrick also purchased some other units from Poling. Subsequently, Biggs bought units from Poling, Wyrick, and other grantees of Poling. The issue in the case was whether Biggs was a bona fide purchaser for value of 1,534 units (1,536 minus the 2 units that Poling and Wyrick had agreed on) when his deed from Wyrick conveyed all the right, title and interest that Wyrick held in the royalty by virtue of the deed to Wyrick from Poling. The court held that Biggs was not a bona fide purchaser for two reasons: his knowledge of the mistake in the deed from Poling to Wyrick and the assignment by Wyrick to Biggs "constituted no more than a quitclaim of whatever interest Wyrick had in the royalty." *Biggs*, 134 S.W.2d at 805.

Under the reasoning in *Biggs*, equitable title to the minerals never passed to Clarence Bright by the Johnsons' deed dated May 2, 2002, and Clarence Bright received at most only the legal title to the minerals by mistake in the deed. Legal title to the minerals was not paid for by him, and he

12

held them at all times in trust for the Johnsons. *Biggs*, 134 S.W.2d at 806. Dwaine Bright testified that he was "just buying half of whatever [Clarence Bright] had" in 2003. He admitted that he had not looked at the erroneous deed from the Johnsons to his father; therefore, he cannot claim that he relied on the terms of that deed when he agreed to purchase a one-half interest in the thirty-three acres and pay one-half of what his father paid the Johnsons.

The first two issues of the Brights are overruled. Because Dwaine Bright did not prevail on his claim and there are no fact issues raised, the third and fourth issues are overruled.

*The Reformed Deed*

In their fifth issue, the Brights contend that the trial court erred in its reformation of the May 2002 deed from the Johnsons because the reformed deed did not "state and enforce the contract the parties have written." Although the trial court's reformed deed basically followed paragraph 2(A)(2), we modify the trial court's reformed deed as follows:

**RESERVATIONS FROM CONVEYANCE AND WARRANTY**

> SAVE and EXCEPT, and there is hereby reserved unto Grantors, their heirs, successors, and assigns, all of the oil, gas and other minerals which they now own in and under and that may be produced from the above described property.

*This Court's Ruling*

The judgment of the trial court is modified, and as modified, affirmed.

TERRY McCALL

JUSTICE

December 10, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

13

**Opinion filed December 10, 2009**

In The

# Eleventh Court of Appeals

————

## No. 11-07-00379-CV

————

## CLARENCE O. BRIGHT AND INTERVENOR
## CLARENCE D. BRIGHT, Appellants

### V.

## FLOY HUBERT JOHNSON AND
## SHIRLEY A. JOHNSON, Appellees

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CV28227**

### DISSENTING OPINION

I respectfully dissent. The majority's ultimate conclusion: that when both parties to a purchase agreement believe that it conveyed only the surface, then their deed should transfer title only to the surface is logically sound. Furthermore, I find the conflict between Clarence O. Bright's testimony that he knew the Johnsons were keeping the minerals and his prayer to this court asking for clear title to those same minerals problematic. Consequently, if we were resolving this issue strictly on equitable principles, I would have no trouble reforming the deed. But, because we are not, because the Johnsons do not challenge the

enforceability of the purchase agreement, and because our opinion will create uncertainty in other title and contractual matters, I respectfully dissent.

My concerns are twofold. First, I believe that we are improperly relying upon extrinsic evidence. The Johnsons do not ask this court to reform the underlying purchase agreement. We have previously held that in such an instance extraneous evidence is inadmissible to explain the contract's language. *See Wright v. E.P. Operating Ltd. P'ship*, 978 S.W.2d 684, 687 (Tex. App.—Eastland 1998, pet. denied). We reached this conclusion based upon our responsibility to "carry into effect the intent of the parties as expressed [in the agreement]. It is not the intent that the parties may have had but failed to express in the instrument, but it is the intent that is expressed by the instrument." *Id.* (citing *Pierson v. Sanger*, 53 S.W. 1012 (Tex. 1899)).

Even though no challenge is made to the underlying agreement, our opinion discusses Floy Johnson's and Clarence Bright's testimony describing their subjective intent concerning the reservation of the minerals and their statements at closing, and we clearly rely upon this testimony to reach our conclusion. Not only does this run counter to the parol evidence rule, but also it is inconsistent with the merger clause that the parties included in their agreement[5] – a clause whose operation is not challenged on appeal. A merger clause presumes that all prior negotiations and agreements relating to the transaction have been merged into the contract; consequently, the contract will be enforced as written and cannot be added to, varied, or contradicted by parol evidence. *See ISG State Operations, Inc. v. Nat'l Heritage Ins. Co.*, 234 S.W.3d 711, 719 (Tex. App.—Eastland 2007, pet. denied). Our consideration of Floy Johnson's and Clarence Bright's testimony is at odds with the terms of this unchallenged contractual provision.

The majority correctly notes that we may consider the facts and circumstances surrounding the execution of a contract. The limits of this rule are not clearly defined. However, commentators have indicated that it is limited to pre-conveyancing issues such as vocabulary peculiar to the conveyor, utilization of a drafting agent or use of a form instrument, the skill of the scrivener in the use of language or terms of art, the prevailing manners of expression at the time, and other evidence that affected the formulation of the terms of the instrument. *See* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction*, 24 TEX. TECH L. REV. 1, 14 (1993). But regardless of how the rule is defined, it is clear that it does not permit proof of the parties' subjective intent. *See* Mark K. Glasser & Keith A. Rowley, *On Parol: The Construction and Interpretation of Written Agreements and the Role of Extrinsic Evidence in Contract Litigation*, 49 BAYLOR L. REV. 657, 669 (1997).

---

[5]That clause provided: "AGREEMENT OF PARTIES: This contract contains the entire agreement of the parties and cannot be changed except by their written agreement."

My apprehension is the effect our analysis will have on future contracts. By broadening the scope of surrounding circumstances, we make it more difficult to determine a contract's meaning because of the uncertainty over what now is or is not a permissible evidentiary consideration. By disregarding the merger clause, we make it more difficult for contracting parties to limit the risk of subsequent litigation. We are also potentially increasing transactional costs. Assume Clarence Bright had conveyed his interest to an innocent third party before the dispute arose. What burden do we place upon this third party when we undercut the ability to rely upon the documents in a chain of title? And how will that increased cost and risk be absorbed? I realize that an innocent purchaser has defenses to a title challenge,[6] but even successful litigation imposes transactional costs.

My second concern is that our opinion assigns a meaning to the phrase "all of record" that no practitioner would have expected, and, therefore, a definition that will cause uncertainty in any chain of title with a document containing that phrase. We hold that the Johnsons retained all of their minerals because the contract contained the following phrase: "To be additionally retained by Seller: ALL OF RECORD." We reach this conclusion by defining the term "all of record" to mean all of the minerals that the Johnsons owned of record. I respectfully disagree.

The phrase "all of record" is commonly understood to refer to documents on file. For example, in *E.P. Operating Ltd. P'ship*, 978 S.W.2d at 688, we wrote:

> The language stating that the conveyances were made *subject to any and all reservations presently of record including without limitation that property reserved by* the Wrights does not reserve any mineral interest in Oregon's predecessors in title, but rather recognizes that reservations have been made in the past and are in the chain of title.

I note that, if the parties had used "all of record" to describe the interest outstanding in third parties, we would have applied its normal meaning.[7] I appreciate that there is a difference between an exclusion for interests in third parties and a reservation of interests to the seller, but this distinction does not justify defining "all of record" differently.[8]

---

[6] *See Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (A bona fide purchaser is one who acquires property in good faith, for value, and without notice, actual or constructive, of any third-party claim or interest. This status is an affirmative defense to a title dispute.).

[7] I note also that the parties used the term "as of record" to describe the easements to which the grant was subject. The scrivener treated this as a reference to the easements on file. This is consistent with common practice, and no one complains.

[8] The practical distinction between a reservation and exception is questionable today. *See, e.g., Pich v. Lankford*, 302 S.W.2d 645, 650 (Tex. 1957) (the words "exception" and "reservation" are not strictly synonymous but are often used interchangeably); *Reynolds v. McMan Oil & Gas Co.*, 11 S.W.2d 778, 781 (Tex. Comm'n App. 1928,

Moreover, by holding that the meaning of "all of record" depends upon its placement in the contract and the other circumstances of the transaction, we create uncertainty in chains of title. The parties should have simply said "all" when describing the mineral interests to be retained by the Johnsons. But they did not. They instead referred to "all of record." The scrivener properly read this to refer to title documents on file. Regrettably, this effectively precluded any reservation because it is difficult to envision a previously filed document describing the Johnson's retained mineral interest, but we should not create uncertainty for others by saying "all of record" does not carry its normally accepted meaning simply because the language chosen by the parties may not have accurately said what they intended to say. *See Canter v. Lindsey*, 575 S.W.2d 331, 334 (Tex. Civ. App.—El Paso 1978, writ ref'd n.r.e.) (the question is not what the parties meant to say, but the meaning of what they did say); *see also Dahlberg v. Holden*, 238 S.W.2d 699, 701 (Tex. 1951) (courts must construe contracts as written and may not alter the parties' language by interpolation or substitution).

For these reasons, I respectfully dissent.

RICK STRANGE

December 10, 2009                                                    JUSTICE

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.

---

holding approved) (for the purpose of determining the extent of the grant, the distinction between an exception and a reservation is of no practical importance, for the property excepted or the estate reserved is never included in the grant); *see also* 8 Howard R. Williams & Charles J. Meyers, *Oil and Gas Law* 336 (2008) (the distinction between exceptions and reservations has lost most of its importance in contemporary law).