## BIGGS v. POLING et al.

No. 5072.

Court of Civil Appeals of Texas. Amarillo.

Nov. 6, 1939.

Rehearing Denied Dec. 18, 1939.

of Carson County, Texas. The E. S. Poling devisees and legal representatives were made parties defendant. The Navajo Oil Company, the Canadian River Gas Company, the Parcomis Oil and Gas Company, other holders of leases and many persons holding small royalty interests, which we deem unnecessary to mention, were also made parties defendant. Such trial court defendants are appellees in this court.

The suit was in the nature of an action in trespass to try title. It was to recover $\frac{1587}{3072}$ of $\frac{1}{8}$ of the minerals, or $\frac{1587}{3072}$ of the non-participating royalty interest in some four and one-half sections of land in Carson County, Texas. The evidence is uncontroverted that E. S. Poling held the fee simple title to the four and one-half sections of land and that beginning in July, 1925 he sold some of the royalty interest in the minerals in these lands. These sales were made on the basis of so many "units", a unit being $\frac{1}{1536}$ of $\frac{1}{16}$ of the minerals. The instruments by which such units were conveyed reserved to the grantor, E. S. Poling, all right to make and control leases, to collect and retain bonuses and rental payments, and thus the royalty interests conveyed were non-participating in so far as the lease money and rentals were concerned. The royalty deeds conveyed only an undivided interest in and to all the oil, gas or other minerals that should be produced and removed from the lands. No issue was raised as to the nature of the royalty interests conveyed by these various conveyances in so far as they were non-participating, and no issue presented as to whether the $\frac{1}{16}$ referred to meant so many units in $\frac{1}{16}$ of the minerals in place, it being assumed that $\frac{1}{16}$ was one-half of the royalty.

The evidence showed that E. S. Poling was offering for sale one-half of his royalty in small units of $\frac{1}{1536}$ of $\frac{1}{16}$ at the rate of $100 per unit. One J. A. Waybourn, now deceased, was employed as broker to sell these units and it was largely through his efforts that the royalty was sold not only to Wyrick but to all others who purchased. On July 1, 1925, Waybourn as salesman and presumably the agent of E. S. Poling, entered into a written contract with J. A. Wyrick to convey to the latter two units of the minerals or an undivided $\frac{2}{1536}$ of an undivided $\frac{1}{16}$ interest for $200. In pursuance to this agreement the deed of July 20, 1925 from E. S. Poling to J. A. Wyrick was executed. Printed forms had been prepared and were used in this trans-

H. H. Cooper, of Amarillo, for appellant.

Adkins, Pipkin, Madden & Keffer, Wm. L. Darrah, and Shannon, Ochsner & Little, all of Amarillo, for appellees.

FOLLEY, Justice.

This suit is resolved into a controversy as to the effect of a royalty deed executed by E. S. Poling on July 20, 1925 in favor of J. A. Wyrick. E. S. Poling died December 24, 1928 leaving a will devising to his widow and children all of the land hereinafter mentioned. E. R. Biggs, the appellant herein and successor in interest to Wyrick in the deed mentioned, filed this suit on June 13, 1938 in the District Court

fer and in all the other sales of such royalty interest, such forms having blank spaces in which to fill in the number of units conveyed by such instruments. We here quote such portions of the deed in question as we deem germane to the present controversy:

"That I, E. S. Poling, residing in the County of Potter and State of Texas, for and in consideration of the sum of $200/00 Dollars cash to in hand paid by J. A. Wyrick, have bargained and sold, and by these presents do grant, bargain, sell, convey and deliver unto the said J. A. Wyrick, of the County of Childress and State of Texas, an undivided 1536 Fifteen Hundred Thirty-sixth ( -1536) interest in and to an undivided One-Sixteenths (1-16) interest in and to all the oil, gas and mineral substances, in and under the surface of that certain parcel of land situated and being in Carson County, Texas, and particularly described as Sections Numbers 22, 24, 26, 27 and the East One-half of Section Number 12, all in Block Y-2, Carson County, Texas, containing 2560 acres more or less.

"To have and to hold, all and singular, such minerals and mineral rights, unto him, the said J. A. Wyrick, his heirs and assigns, forever, subject, however, to all existing and valid leases thereon, it being intended and purposed hereby that the said grantee is to have the right to have the above described interest if taken out under existing or subsequent lease contracts, the equal ————-1536 of 1-16 royalty or that portion of the oil, gas, or minerals, or proceeds from same, taken from said land, which right inures to the benefit of him and his assigns forever."

It is apparent from an examination of the above deed that there are two blank spaces which were not filled in at all and that the first "1536" appearing above was inserted before the words "Fifteen Hundred Thirty-sixth" instead of the figure "2" or the word "two" as agreed upon, which purportedly was 1534 more units than called for in the contract. These 1534 units form the basis of the present controversy.

Numerous other conveyances were made thereafter of various units of this royalty. On November 20, 1925 E. S. Poling conveyed five additional units to J. A. Wyrick for $500, about which transaction no question is raised. On September 5, 1925 the appellant himself contracted to purchase fifty units of this royalty but the deed in connection therewith was not delivered until after the death of E. S. Poling. This contract recited a cash consideration of $500 and the execution of a note by Biggs in the sum of $4500, making a total of $5000 for the fifty units. The testimony shows that Biggs paid only $1200 to Poling on this contract and further shows that Poling requested his legal representatives before his death to deed Biggs twelve units of the royalty in satisfaction of the $1200 paid by him. The independent executors of the Poling Estate by an instrument of the date of May 27, 1930 deeded these twelve units to Biggs and such deed recited that the conveyance was in satisfaction of the royalty contract made during the lifetime of E. S. Poling.

In addition to the twelve units he acquired under the 1925 contract with Poling, in 1938 the appellant purchased thirty-four other units from grantees of Poling other than Wyrick. Twenty-eight of these thirty-four units were purchased in January, 1938 and the other six in June, 1938. By his own testimony Biggs admitted that he purchased these thirty-four units at about 10% of their original value. On February 24, 1938 Biggs purchased from J. A. Wyrick all the right, title and interest that the latter held in the royalty of such land by virtue of the deed to Wyrick from Poling of the date of July 20, 1925 purporting to convey the units in controversy and by virtue of the deed between the same parties of the date November 20, 1925 conveying the five units not in dispute. The consideration paid to Wyrick by Biggs in this transaction was shown to have been $304.

Under the above facts it is conceded by the appellees that the appellant owns fifty-three units of the royalty in question, fifty-one of which having been acquired by him in deeds and assignments regular in every respect, and the other two units the appellees admit were passed to the appellant under the deed of July 20, 1925 upon his acquisition of the rights of Wyrick therein. The real controversy in the case narrows down to the conveyance from E. S. Poling to J. A. Wyrick purporting to convey "1536 Fifteen Hundred Thirty-sixth" interest in and to an undivided $\frac{1}{16}$ interest in the minerals of the land. Biggs, who claims through Wyrick, asserted that such deed passed a full $\frac{1}{16}$ (one-half) of the royalty and that having acquired Wyrick's interest on February 24, 1938 he was the owner of one-half of the royalty in

the land plus fifty-one units, or $1587/8072$ of ⅛ of the royalty.

The evidence shows that the instrument of July 20, 1925 was not recorded until after E. S. Poling's death, it having been filed for record February 13, 1929. J. A. Wyrick testified that he kept the deed in a tin can in his dugout in Childress County until he heard that E. S. Poling's will was being probated, whereupon he sent the deed to Carson County to be recorded. J. A. Wyrick further testified that in the deed of July 20, 1925 he understood that he was buying only two units for the $200 paid therefor and that he did not know that such deed purported to convey to him more than two units until after he had sold what he thought was seven units to E. R. Biggs in February, 1938. Wyrick never at any time made any claim to more than two units under the deed of July 20, 1925.

Production of gas was begun on the land in 1928 under leases held by various companies. At the time Biggs acquired Wyrick's title in 1938 it was shown that the 1534 units of the royalty now claimed by Biggs would have been worth about $24,000 in accrued royalties or moneys for gas that had been produced and never paid to Wyrick, which necessarily would have been due to the appellant if he should prevail in this suit. In addition to such amount the mineral interest yet to be produced exceeded in fair market value $30,000, nevertheless, the appellant purchased such purported interest for $304 from one who thought he owned only a nominal portion of the royalty, to-wit, seven units, five of which he obtained by the deed of November 20, 1925, and the other two by the deed in question. The testimony further shows that Biggs discovered the apparent error in the deed by a detailed examination of the deed records of Carson County shortly before his purchase from Wyrick, but that he did not reveal such discovery to Wyrick. Moreover, a fair analysis of his testimony would warrant no other conclusion than that he knew Wyrick was under the impression that the latter owned only seven units and that such was the amount Wyrick thought he was selling to Biggs in February, 1938. In this connection it should be stated that Wyrick is not a party to this suit. However, by his testimony he made no claim under the deed of July 20, 1925 other than to the two units he contracted to purchase.

As a defense to appellant's claim the appellees alleged that if the deed in question conveyed any interest to Wyrick other than the two units such fact was unintentional and due to a mutual mistake on the part of E. S. Poling, J. A. Wyrick and the scrivener who drew the instrument; that in the alternative if the mistake was only upon the part of E. S. Poling that the same constituted a fraud upon the part of J. A. Wyrick; that if Wyrick had knowledge of the mistake he accepted the instrument without calling attention to the mistake and at all times fraudulently concealed the same; that E. S. Poling never discovered the mistake during his lifetime and that his failure to discover such mistake was not due to any negligence on his part; that the representatives of the Poling Estate, as well as the devisees under the Poling will, did not, and could not, in the exercise of reasonable diligence, discover the same; that although production was begun on the land as early as 1928 and continued thereafter in increasing amounts, and although appellees at all times claimed and collected the royalties accumulating on the additional royalty interest claimed by Biggs, and asserted ownership to such mineral interest, J. A. Wyrick at no time ever asserted any claim that he had any character of interest in said royalty by reason of the conveyance in question other than the two units which appellees admitted were thereby conveyed; that the first demand of any sort made upon the appellees for a greater interest under said deed than two units was the filing of the suit by Biggs in June, 1938; that the lessees of the Polings of the mineral interests were producing gas under their respective leases; that at all times since June 5, 1923, the date of the first mineral lease, the possession of the land in question had been in the Polings and the oil and gas companies who were developing and producing the gas, and that said parties occupied and used the same and paid the taxes thereon; that E. S. Poling during his lifetime, and the appellees after his death, received and appropriated to their own use all rents, revenues, and royalties accruing from the 1534 units now in controversy; that the instrument of February 24, 1938 conveying the interest of Wyrick to the appellant was only a quitclaim deed and therefore conveyed to Biggs only the interest that Wyrick possessed, which was $7/1536$ of ⅛₆; and that because of this and the further fact that

the appellant had knowledge of the mistake and paid a grossly inadequate consideration for the purported 1534 units, Biggs could not have been an innocent purchaser.

The appellant filed a supplemental petition in which he pleaded the four year statute of limitation as a bar to the reformation of the instrument of July 20, 1925. In this connection it should be stated that the appellees pleaded the facts above stated as a defense to the appellant's right to recover and further asked for all relief, general and special in law and equity, to which they were entitled. Under such pleadings we think the issues hereinafter discussed were joined by the pleadings of all the parties.

The case was submitted to a jury upon special issues the answers to which in effect found upon sufficient testimony that E. S. Poling and J. A. Wyrick both intended that only two units should pass under the deed of July 20, 1925; that Biggs had notice of the mistake in the deed; that the market value of such $\frac{1}{16}$ royalty plus $\frac{5}{1536}$ of the remaining $\frac{1}{16}$ of the minerals alleged by Biggs to have been acquired by him from Wyrick was $25,000 on, the date of the transfer to the appellant; that on such date $22,782.61 had accumulated from the mineral interest that Biggs alleged he acquired from Wyrick; that on such date the appellant was acquainted with the approximate value of the mineral interest and the amount of royalty money that had accrued from the interest he alleged to have acquired from Wyrick; and that E. S. Poling and his devisees and legal representatives · failed to discover the mistake in the deed, none of whom had knowledge of any facts or circumstances which were sufficient to have caused a reasonably prudent person to make inquiry which if pursued with reasonable diligence would have led to the discovery of the mistake prior to the filing of appellant's suit. Upon this verdict the court rendered judgment for the several appellees other than the Polings for the specific interest they were shown to have owned and about which there is no dispute. This judgment also awarded to the appellant $\frac{53}{1536}$ of an undivided $\frac{1}{16}$ interest in and to the oil, gas and minerals in the land, denied the appellant any recovery for more than two units under his claim by virtue of the deed of July 20, 1925 from Poling to Wyrick, and decreed in the Poling devisees all other royalty interests in the land not otherwise awarded as above

set out. The recovery of Biggs and of the Poling devisees was made subject to the terms and provisions of all the outstanding oil and gas leases and no complaint is made of this portion of the judgment.

There is no issue in this case with respect to the gas and oil companies. They disclaimed ownership to the minerals in dispute between the Polings and the appellant and asserted no ownership other than such as was acquired under their respective leases about which there is no controversy. They appear in this suit chiefly in the role of stakeholders and due to our disposition of this case they shall not be further noticed.

We think it is evident from the record that the appellant does not maintain the position of an innocent purchaser for value. Aside from the palpable inadequacy of the consideration paid by him for the purported royalty, and his knowledge of the mistake in the deed of July 20, 1925, the assignment from J. A. Wyrick to E. R. Biggs of the date of February 24, 1938 constituted no more than a quitclaim of whatever interest Wyrick had in the royalty. We shall not prolong this opinion by quoting from such instrument but deem it sufficient to state that Wyrick granted, bargained, sold, etc., to E. R. Biggs all of his right, title, interest and estate into an undivided interest in the oil, gas and minerals under the land situated in Carson County theretofore conveyed to Wyrick by the deeds above mentioned. This conveyance was almost identical with the one in issue in the case of Houston Oil Company of Texas et al. v. Niles et al., Tex. Com.App., 255 S.W. 604, 610. In such case the Commission of Appeals, with the approval of the Supreme Court of Texas, held that such instrument was a mere quitclaim and further held, in line with numerous decisions therein cited, that the holder under such an instrument was prevented from asserting the defense of innocent purchaser "as against an outstanding title or secret trust or equity existing at the time the quitclaim deed was executed".

As we view this case there is but one issue in it and that is whether or not under the record presented the four year statute of limitations asserted by the appellant is a bar to the recovery of the appellees. From the above recitations it is very evident that the equities in the case are resolved against the appellant both by the facts introduced and by the verdict of the jury. Regardless

806

of this situation the appellant stands in this court in the attitude of Shylock of Shakespearean fiction demanding his "pound of flesh".

██ Under the facts of this case we think it is conclusive that the equitable title to the 1534 units of royalty never passed to J. A. Wyrick by the deed of July 20, 1925, and that Wyrick received at most only the legal title to such units by mistake in the deed which legal title was not paid for by him and which he held at all times prior to February 24, 1938 in trust for Poling and his devisees and legal representatives. Wyrick never at any time during such period made any claim to such interest which was for all purposes in the possession of Poling and his successors. Wyrick at all times recognized the equities of E. S. Poling and his devisees. Whether he knew of the mistake in the deed or not his acquisition of the legal title was wrongful and constituted at least constructive fraud, and therefore created a constructive trust in favor of those for whom he held the legal title. In Bogert's Trust and Trustees, Vol. 4, page 2768, § 953, it is said: "If, after the wrongful acquisition or withholding of property which could be made the basis for a constructive trust, the acquirer or holder recognizes the equity of the wronged party and in substance asserts that he holds legal title in trust for the injured person, the authorities agree that the statute of limitations does not operate against the cestui. Such conduct amounts to the declaration of an express trust; and it should take a subsequent repudiation of such express trust to set the statute running."

 It has been held by the Supreme Court of this State that in a trespass to try title action the superior title which will enable a party to prevail in the suit may be either legal or equitable. The case of Gilmore et al. v. O'Neil, 107 Tex. 18, 173 S.W. 203, is one instance in which our Supreme Court has announced such a rule in a situation very similar to that existing in the instant case. In fact, we think that case is directly in point in many respects with the instant case and is decisive of all the material issues in this case. In the Gilmore case Jones and wife in 1903 intended to convey to Mrs. Duey 1⅔ acres of land but instead conveyed by deed only 1.35 acres, thereby omitting by mistake about ⅓ of an acre from the conveyance. Jones caused 1⅔ acres to be surveyed and set apart as the tract conveyed to Mrs. Duey and at all times thereafter to the time of his death recognized and treated it as such. Mrs. Jones on January 8, 1908, after the death of her husband, executed an oil lease on her land to Gilmore and others which purportedly included the ⅓ acre that was omitted by mistake in the deed to Mrs. Duey. On August 1, 1908 Mrs. Duey conveyed an undivided one-half interest in her tract to Kuhn, and on July 29, 1908 Kuhn acting for himself and as attorney in fact for Mrs. Duey executed an oil lease to Donahue, who on August 1, 1908, assigned the lease to O'Neil. Thereafter on September 17, 1908 O'Neil acquired the interest of Mrs. Duey and Kuhn in a deed describing the land conveyed as 1.662 acres. Oil was produced in considerable proportions from a well situated on this ⅓ acre in dispute. Gilmore and his co-plaintiffs on September 30, 1908 filed a suit in trespass against O'Neil and the Texas Company, a stakeholder, for title and possession of the ⅓ acre of land and $29,563.25 proceeds of the oil well. At such time O'Neil was in possession holding under his lease and deed. At the time this suit was filed the deed from Jones and wife containing the mistake was five years and two days old and the plaintiffs in that suit interposed the four year statute of limitation as a bar to O'Neil's recovery. In that case Gilmore and the other plaintiffs were in the same position as the appellant Biggs herein. They held the legal title to the land and the defendant O'Neil held the equitable title in comparison to that held by the appellees in the instant case. In such case the Supreme Court, 107 Tex. 18, 173 S.W. 203, 206, in the course of an opinion written by the late Justice Phillips said:

"It will simplify the entire case to first determine where lies the superior title to the land. This does not mean the legal title, but the superior title, whether legal or equitable, since an equitable title may be superior to the legal title, and will prevail over the legal title if capable of being enforced against it.

\* \* \* \* \* \*

"O'Neil's pleading recited the facts, substantially as we have stated them, and as the jury found them, the effect of which was to invest him with a superior equitable title to the land, and reveals that, upon such a title and notice of the equity by the plaintiffs in the acquisition of their rights,

his defense to their suit was rested. His prayer for the removal of the cloud upon his title, cast by the claims of the plaintiffs and interveners, did not alter the character of his defense, or convert it into an affirmative action subject to limitation. If his was the superior title and capable of enforcement against the legal title, his right to be quieted in it would follow. Asserting, as he was, a superior equitable title, independent of the deed of Jones and wife to Mrs. Duey, as the basis of his defense, in what way was the reformation of that deed essential to the establishment of his defense? With no possession adverse to his right, how could limitation affect his right? It is not the law, and could not well be the law, that, in a trespass to try title action, proof of an equitable title by a defendant in possession is subject to limitation. What was said by Judge Wheeler in Newsom v. Davis, 20 Tex. 419, concerning the rights of a defendant in possession of land under a bond for title, having paid the consideration—one no more favorably circumstanced than a defendant in possession under such a sale as is shown to have been made by Jones to Mrs. Duey, with the full consideration paid, followed by valuable improvements in good faith—may be here aptly quoted:

" 'The defendant being in possession under a contract to convey, and having paid the consideration, is the equitable owner of the land. His is superior to the legal title remaining in his vendor; and, there being no possession adverse to his right, the statute of limitations does not run against it. Vardeman v. Lawson, 17 Tex. 10.'

"It was announced in Rutherford v. Carr, 99 Tex. 101, 87 S.W. 815:

" 'There is no statute of limitation which prescribes a bar to the proof of a fact material to sustain or defeat a cause of action or defense; such statutes act upon the cause of action.'
\* \* \* \* \* \*
"Under the findings of the jury upon the issues of fact, it is our opinion that O'Neil was entitled to recover the land and the proceeds of the oil. This, it seems to us from an examination of the record, accords with the justice and right of the case; and that is what the law of a case ought to be."

There is another case which we think is of great importance in the disposition of the instant case. Such case is that of Terry et al. v. Baskin et al., Tex.Com.App., 44 S.W.2d 929, 78 A.L.R. 1067. In such suit J. M. Terry owned 200 acres of land in Milam County, Texas. He was twice married and had two sets of children. In 1915 after the death of Terry the first set of children employed the law firm of Morrison & Lewis to recover for them their interest in the land and made a contract which was, in effect, a deed conveying to such attorneys an undivided one-half interest in the land to be recovered. Such instrument was duly acknowledged and recorded in the deed records of Milam County. That same year these attorneys filed suit and recovered the land in a judgment which recognized the homestead rights of the second wife of Terry. This second wife occupied the land until her death in 1927 and the heirs occupied the land thereafter. In December, 1928 the attorneys filed a partition suit against the heirs of Terry. The children of Terry who thirteen years before had executed the conveyance to Morrison & Lewis pleaded that such conveyance was procured by fraud. By special exceptions Morrison & Lewis replied setting up a plea of limitations as a bar to setting aside the conveyance in question by reason of the alleged fraud. The trial court sustained these exceptions and rendered judgment for the attorneys. The Court of Civil Appeals affirmed the judgment, 27 S.W.2d 857, and held that the title of Morrison & Lewis could only be avoided by a suit brought by the defendants to cancel the instrument of August 7, 1915 before they could recover the land, and that the allegations of fraud set up by them constituted an action for affirmative relief. In an opinion approved by the Supreme Court, 44 S.W.2d 929, 931, 78 A.L.R. 1067, Judge Critz, speaking for the Commission of Appeals, said:

"We think the Court of Civil Appeals is in error in the above holding, and further is in error in holding that the issues of limitation involved in the present suit are determined by the rule announced in Deaton v. Rush, supra [113 Tex. 176, 252 S.W. 1025]. In that case the grantor was attempting to recover from his grantee in possession by virtue of the grant, and it was very correctly held that a vendor having an equitable right to rescind and cancel a conveyance for fraud could not maintain a suit for the recovery of the land from

his vendee in possession without the cancellation of the deed, though he may have judgment for such cancellation, and, as an incident thereto, for the recovery of the land in the same suit. Of course, in such a case, if the right to cancel the conveyance is barred by limitation, no recovery of the land can be had; this for the simple reason that it is absolutely necessary to cancel the conveyance before the land can be recovered.

"As disclosed by the pleadings, we are confronted with very different conditions in the instant case from the conditions in Deaton v. Rush. In the instant case, the defendants are in possession of the land, and the plaintiffs, Morrison & Lewis, are seeking to oust them of such possession by means of a suit for partition and sale through a receiver. Morrison & Lewis in effect pleaded the power of attorney and conveyance to them as the basis of their asserted rights. Defendants pleaded as a defense to the right of Morrison & Lewis to recover that such power of attorney and conveyance was procured by fraud, and is therefore void. In this condition of the record, no statute of limitation bars the defense. Newsom v. Davis, 20 Tex. 419; Rutherford v. Carr, 99 Tex. 101, 87 S.W. 815, 817; Gilmore v. O'Neil, 107 Tex. 18, 173 S.W. 203, 207; Mason v. Peterson (Tex.Civ.App.) 232 S.W. 567; Id. (Tex.Com.App.) 250 S.W. 142 (opinion approved); Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 309, 255 S.W. 601.

\* \* \* \* \* \*

"In Mason v. Peterson, supra, which is expressly approved by the Supreme Court, the Commission of Appeals, speaking through Judge McClendon, expressly held that fraud or mistake enters into and vitiates a contract for the sale and purchase of real estate to the extent of the resultant injury, and is a defense available to the purchaser in a suit on his obligation, and, where he seeks relief only by way of defense to defeat in whole or in part the obligation for the purchase, his defense is not affected by the statute of limitation.

\* \* \* \* \* \*

"From what we have said it is evident that we hold that the defendants' special answer of fraud alleges a defense to the cause of action asserted by the plaintiffs Morrison & Lewis, and that such defense is not barred by any statute of limitation."

In view of the above authorities it is our opinion that the statute of limitations urged by the appellant herein was not a bar to the defense asserted by the appellees and it is our further opinion that the equitable title of the devisees and legal representatives of E. S. Poling to the 1534 royalty units in controversy was shown to be superior to the legal title of the appellant, and therefore the appellees are entitled to prevail. Rutherford et al. v. Carr, 99 Tex. 101, 87 S.W. 815; Luginbyhl et al. v. Thompson, Tex.Civ.App., 11 S.W.2d 380, writ dismissed; Mason v. Peterson et al., Tex.Com.App., 250 S.W. 142; Texas Co. et al. v. Davis et al. 113 Tex. 321, 254 S.W. 304; Emerson v. Navarro et al., 31 Tex. 334, 335, 98 Am.Dec. 534; Pinkham v. Pinkham et al., 60 Neb. 600, 83 N.W. 837; Id. 61 Neb. 336, 85 N.W. 285; Eastern Gulf Oil Co. et al. v. Lovelace et al., 188 Ky. 238, 221 S.W. 544. What we have said we think disposes of the real issue in this case and after such disposition all other issues raised by the appellant become immaterial.

The judgment is affirmed.