Opinion filed December 10, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed December 10,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00379-CV 

                                                     __________

 

                              CLARENCE
O. BRIGHT AND INTERVENOR

                                  
CLARENCE D. BRIGHT, Appellants

 

                                                             V.

 

                                    FLOY
HUBERT JOHNSON AND

                                   SHIRLEY
A. JOHNSON, Appellees

 



 

                                         On
Appeal from the 266th District Court

                                                           
Erath County, Texas

                                                 Trial
Court Cause No. CV28227

 



 

                                                                   O
P I N I O N

Floy
Hubert Johnson and Shirley A. Johnson filed this suit against Clarence O.
Bright to reform a deed dated May 2, 2002, by which they conveyed thirty-three
acres to Clarence O. Bright.  They alleged that the sales contract between the
parties called for all minerals to be reserved or retained by the Johnsons;
but, through a scrivener=s
error, the warranty deed failed to reserve or retain the minerals.  Clarence O.
Bright acknowledged that he had agreed that the Johnsons would keep all the
minerals and that, even at closing, he still believed they had.








Clarence
O. Bright=s son,
Clarence Dwaine Bright, intervened in the suit.  He testified that he purchased
one-half of what his father had purchased from the Johnsons.  Clarence Bright
had paid $59,400 to the Johnsons for the thirty-three acres, and Dwaine Bright
paid $30,000 for the undivided one-half interest.  Clarence Bright and Dwaine
Bright executed a  document, which was not recorded, but which was dated June
13, 2003, to reflect Dwaine Bright=s
acquisition from Clarence.  After the Johnsons filed this suit and a notice of
lis pendens, Clarence Bright executed and caused to be recorded two Acorrected@ deeds without warranty
conveying to Dwaine Bright one-half of Clarence Bright=s interest in the thirty-three acres.  In an
amended petition, the Johnsons also sought a declaratory judgment that Dwaine
Bright was not a bona fide purchaser of that interest.

The
trial court granted summary judgment to the Johnsons on their reformation
claims and reformed their deed to show that they retained all of the minerals
that they owned at the time of the conveyance.  The trial court also granted
summary judgment to the Johnsons on Dwaine Bright=s
claim that he was a bona fide purchaser.  Additionally, the trial court denied
Clarence and Dwaine Bright=s
motion for summary judgment.  In the Brights=
first two issues, they argue that the trial court should have denied the
Johnsons= motion for
summary judgment and should have granted their own motion.  In their third
issue, they contend that the trial court erred in denying Dwaine Bright=s recovery of his attorney=s fees.  In the alternative
fourth and fifth issues, they contend that there were fact issues that
precluded summary judgment and that the trial court erred in its reformation of
the May 2002 deed.  Overruling all of the Brights=
issues, we modify and affirm.

  Standard
of Review








We
review the trial court=s
summary judgment de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003).  The parties filed traditional motions for
summary judgment.  A trial court must grant a traditional motion for summary
judgment if the moving party establishes that no genuine issue of material fact
exists and that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991).  When reviewing a
traditional summary judgment, the appellate court considers all the evidence and
takes as true evidence favorable to the nonmovant.  Am. Tobacco Co. v.
Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  The appellate court Amust consider whether
reasonable and fair-minded jurors could differ in their conclusions in light of
all of the evidence presented@
and may not ignore Aundisputed
evidence in the record that cannot be disregarded.@  Goodyear Tire & Rubber Co. v. Mayes,
236 S.W.3d 754, 755, 757 (Tex. 2007).  When competing motions are filed and one
is granted and the other is denied, the reviewing court must review the summary
judgment evidence presented by both sides and determine all questions
presented.  The reviewing court should then render such judgment as the trial
court should have rendered.  Comm=rs
Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex. 1997).

The
Farm and Ranch Contract of Sale

In
their motion for summary judgment, the Johnsons argued that in their Farm and
Ranch Contract of Sale (the Sales Contract), the parties agreed that the
Johnsons would reserve all of the minerals.  Therefore, a mutual mistake
occurred when the person preparing the deed to Clarence Bright did not reserve
or retain the minerals on behalf of the Johnsons.  Thus, a scrivener=s error occurred and the
deed should be reformed.

The
Brights argued below, and argue here, that the Sales Contract did not reserve
the minerals to the Johnsons; the Sales Contract Aonly
excepted from the Johnsons=
conveyance those minerals >of
record.=@  They interpret the Sales
Contract to mean that the Johnsons were only excepting from their conveyance
two prior conveyances or reservations of mineral interests that appeared of
record in the chain of title.  The Brights refer to two outstanding mineral
and/or royalty interests owned by third parties at the time: an interest
reflected in an instrument dated March 25, 1949, executed by N.M. Colwick
and wife to Stanley Giesecke and Nettie Giesecke and an interest described in
an instrument dated January 21, 1947, executed by A.P. McCrite and wife to
Stanley Giesecke.  The Brights take the position that these two interests were
the only recorded interests properly excepted from the conveyance and warranty
by the Johnsons in the Sales Contract.

The
parties made written additions to fill in the blanks of the printed Sales
Contract.  In paragraph 2, they described the property as being thirty-three
acres out of the H.S. Stauffer Survey in Erath County.  The relevant part of
paragraph 2 then stated the following:

All
property sold by this contract is called the AProperty.@  The Property will be
conveyed subject to the following exceptions, reservations, conditions
and restrictions (if none, insert Anone@):

 








A.  Minerals,
Royalties, and Timber Interests:

 

(1)
Presently outstanding in third parties: None [ANone@ written in]

 

(2)
To be additionally retained by Seller: All of Record [AAll of Record@ written in] (emphasis
added)

 

The parties followed the instructions and wrote ANone@ in paragraph 2(A)(1) and wrote AAll of Record@ in paragraph 2(A)(2).  Had
they meant for the Johnsons not to retain any minerals, royalties, and timber
interests, they would have written ANone@ in paragraph 2(A)(2). 
Apparently, they did not know of the third-party Giesecke interests when they
wrote ANone@ in
paragraph 2(A)(1).  Floy Johnson testified by deposition that the title
company=s attorney
prepared the deed.  That attorney did list the Giesecke interests as exceptions
in the deed.

We agree with the Johnsons=
reading of the Sales Contract. As we have said, the Sales Contract contains the
following language: AThe
Property will be conveyed subject to the following exceptions, reservations,
conditions and restrictions (if none, insert Anone@).@  That language is followed by these terms:  AA.  Minerals, Royalties,
and Timber interests: (1) Presently outstanding in third parties.@  The parties inserted the
word ANone.@  That language is then
followed immediately by A(2)
To be additionally retained by Seller@
(emphasis added).   The parties wrote the words AAll
of Record@ (emphasis
added).  As to mineral leases and surface leases, the parties wrote in ANone.@  Then, as to easements,
the parties wrote the words AAs
of Record@ (emphasis
added).  This agreement might not be a model of clarity, but we believe that it
reflects the intent of the parties that, as to minerals, there are no
outstanding interests in third parties but that the Johnsons are retaining
all of record.  The earlier use of the words Asubject
to@ apply to those
interests outstanding in third parties, such as easements AAs of Record@ (emphasis added).  The
words used when referring to the remainder of the mineral interests are Aadditionally retained
by Seller@ (emphasis
added).  The careful title examiner or scrivener should know that the Johnsons
were retaining all of the minerals of record and that the conveyance as
to other matters was to be made subject to those other matters. 








We
note that, during the title examination, the examiner apparently discovered
outstanding mineral interests in third parties that were not shown in the sales
contract; these interests were specifically excepted from the conveyance and
warranty in the deed.  The two Giesecke interests should have been listed as
exceptions in paragraph 2(A)(1).  Paragraph 2(A)(2) provided what was to be
retained by the Seller (the Johnsons).  At the time of the Sales Contract, the
Johnsons owned all of the minerals except for the two interests owned by
Giesecke.  The Johnsons did not hire an attorney or do a title search before
they entered into the Sales Contract to sell their thirty-three acres for
$59,400.  We understand that, to avoid the Duhig[1]
rule, a deed should have a reservation by the grantor and a Asubject to@ clause to protect the
reservation.  But here, we are ascertaining the intent of the Johnsons and the
Brights as expressed in their Sales Contract. Neither side retained an attorney.[2] 
Both parties agreed that the Johnsons were to keep all of the mineral interests
that they then owned.  It is not surprising that they simply wrote in that the
Johnsons were Aretaining@ all the minerals that they
owned Aof record.@

Assume
that the parties correctly had included the two outstanding mineral interests
in paragraph 2(A)(1) of the contract.  It would then be clear that the later
conveyance was to be subject to the outstanding mineral interests and
that, additionally, the Johnsons were to retain all of the other
minerals.

Even
if we were not to consider the testimony of the parties regarding the mineral
interests, as the dissent[3] suggests we
should not do, we believe that the Sales Contract on its face shows that
Clarence Bright was to receive no interest in the minerals; they were to be
retained by the Johnsons.








We
are aware, as suggested by the dissent, that oftentimes the terms Areservation@ and Aexception@ are used interchangeably. 
(See dissent, note 4).  But, that depends on the context in which the
terms are used.  Here, the contract goes further and contains not only the
language Areserved,@ it also contains the words
Aadditionally retained@ in reference to the
minerals. The Brights have confused Aexceptions@ and Areservations.@  The parties, under
paragraph 2(A)(2), listed AAll
of Record@ that would
have excepted the two interests owned by Giesecke.  However, the interests
owned by Giesecke would not have been Aretained@ by the Johnsons as the
seller.  They would have been an exception to the property conveyed.  It is
clear from the record and the briefing that the parties were not using the
words Areservation@ and Aexception@ interchangeably; they used
the words Areserved@ and Aretained@ in such a manner that no
minerals were to be conveyed to the Brights.  Here, the Johnsons Aretained@ or Areserved@
the minerals (that they owned of record) to themselves in paragraph 2(A)(2) of
the Sales Contract.  The confusion between exceptions and reservations
permeates the Brights=
argument.

An
exception does not pass title itself; instead, it operates to prevent the
excepted interest from passing at all.  The primary distinction between a
reservation and exception is that a reservation must always be in favor of and
for the benefit of the grantor.  Patrick v. Barrett, 734 S.W.2d 646, 647
(Tex. 1987); Pich v. Lankford, 302 S.W.2d 645, 648-50 (Tex. 1957).  The
Giesecke interests should have been listed as exceptions in paragraph 2(A)(1). 
A reservation is made in favor of the grantor where he reserves to himself
royalty interests, mineral rights, and other rights.  Benge v. Scharbauer,
259 S.W.2d 166, 167-68 (Tex. 1953).[4]  Paragraph
2(A)(2) was the place for that reservation in their Sales Contract.  The
Johnsons would not have reserved to themselves the interests owned by
Giesecke.  The Brights=
argument that the wording Aretained
by Seller: All of Record@
meant that the Johnsons only reserved to themselves Giesecke=s interests is not logical
in view of paragraphs 2(A)(1) and 2(A)(2).








The
Brights= confusion is
demonstrated by their reliance on this court=s
opinion in Wright v. E.P. Operating L.P., 978 S.W.2d 684 (Tex. App.CEastland 1998, pet.
denied).  That case involved an exception and is not applicable.  The Wrights
had executed a deed of trust to Mercantile Bank pledging the surface and
minerals to secure a promissory note.  They then sold the land to the Olivers
who agreed to assume payment of the note.  However, the Wrights failed to
secure from Mercantile Bank a partial release of the minerals from the deed of
trust.  Five years later, the Olivers defaulted, and the successor bank
foreclosed on the deed of trust lien and received a substitute trustee=s deed.  The Wrights
acknowledged that the bank=s
foreclosure also foreclosed their mineral interests, but they argued that the
language in the deeds from the bank=s
subsidiary to the individual appellees had the effect of excluding the minerals
from the conveyance.  The language in the deeds made the conveyances Asubject to@ certain exceptions
referred to as  APermitted
Exceptions.@ These
permitted exceptions included the prior mineral reservation by the Wrights in
their deed to the Olivers.  We held that a reference by recital to mineral
interests that had previously been foreclosed did not reserve those interests
to the bank=s
subsidiary from the conveyance.  Because the deeds from the subsidiary to
appellees did not reserve the mineral estate by a reference to an exception of
a mineral interest that was no longer in existence, a later quitclaim deed from
the subsidiary to the Wrights was ineffective to transfer title to the mineral
interests back to the Wrights.  The bank=s
subsidiary had limited its warranty by the exception; it had not retained the
mineral interests that no longer existed.  We further held that subsequent
actions by appellees in that case had not revived the mineral interests in the
Wrights.  In contrast, the case now before us involves a retention of the
minerals by the Johnsons in the Sales Contract, not an exception.

Perhaps
more importantly, as quoted by the dissent, the language in the deeds in Wright
provided that the conveyances were made Asubject
to@ the various
reservations.  Wright, 978 S.W.2d at 688.  The language in the case
before us is different.  The Sales Contract under review here provided that
there were certain things to which the conveyance would be subject, as in Wright,
but here, unlike Wright, the Johnsons additionally were to retain
all of the minerals of record.

The
dissent asserts that the majority is improperly relying upon extrinsic evidence
because A[t]he
Johnsons do not ask this court to reform the underlying purchase agreement.@ Again, it is apparent from
the Johnson=s position
in the trial court as well as here that, because they believe the Sales Contract
correctly reflects the agreement of the parties, the Johnsons have sought to
reform the deed so that it, too, might properly conform to the agreement of the
parties.  We point out that in Wright there was no claim for reformation
due to mutual mistake or otherwise.  In Wright, we were careful to note
that Athe Wrights did
not plead or seek reformation of any instrument and did not plead fraud,
estoppel, mutual mistake, ambiguity, or any cause of action that would allow
the offer of extraneous evidence to explain the language in the . . . deeds.@  Wright, 978 S.W.2d
at 687 (emphasis added, footnote omitted).  Therefore, what the Wright
court was called upon to do was to interpret instruments and determine the
effect of the language in them.  Unlike Wright, the Johnsons= lawsuit against Clarence
Bright was one for reformation of a deed due to mutual mistake.








The
dissent cites to Wright as support for the position that we have
wrongfully and differently defined the phrase Aall
of record.@  However,
we note again that Wright did not involve a suit for reformation.  We
also note again that Wright was a case involving the use of the phrase Asubject to@ rather than Aadditionally retained@ or Areserved@
when referring to the interest under review.

It
has also been noted that the Johnsons have made no attack upon the merger
clause contained in the sales contract.  It seems to us that there has been no
attack on the merger clause because appellees are not attacking the sales
contract; they want to reform the deed to comport with it.  We are not
disregarding the merger clause but, rather, believe that the contract
explicitly contains the agreement of the parties and that the merger clause is
not relevant to the claims made by the Johnsons in this lawsuit.

A
party is entitled to reformation of a deed when it proves that it reached an
agreement with the other party but the deed does not reflect the true agreement
due to a mutual mistake.  Thalman v. Martin, 635 S.W.2d 411, 413
(Tex. 1982); Ramirez v. Flores, 2006 WL 927295, No. 04-05-00075-CV (Tex.
App.CSan Antonio
Apr. 12, 2006, no pet.) (mem. op.); Hatch v. Williams, 110 S.W.3d 516,
522 (Tex. App.CWaco
2003, no pet).  To reflect the agreement of the parties, the supreme court in Thalman
reformed both deeds that had been exchanged.  In Ramirez, the sales
contract reflected that the Ramirezes agreed to convey the surface estate and
1/16 of the mineral estate; the court noted that the parties agreed that the
Ramirezes retained the remaining 15/16 of the mineral estate.  By a mistake of
the title company, the warranty deed transferred to Flores the surface estate
and the entire mineral estate.  The court held that the warranty deed was
properly reformed to reflect the true agreement of the parties.  And in Hatch,
both parties testified that they had agreed that Williams was to convey only
the 87.2-foot tract, not the entire tract.  However, the attorney who handled
the transaction testified that his office had erroneously attached the wrong
property description to the documents; hence, the deed transferred the entire
tract.  The Waco court found that the deed was properly reformed by the trial
court to reflect their agreement.  Like these cases, the case before us involved
a mutual mistake and a scrivener=s
error.








The
Brights argue that the mistake in the deed by the grantor is a unilateral
mistake, not a mutual mistake, citing Lathem v. Richey, 772 S.W.2d 249,
254 (Tex. App.CDallas
1989, writ denied).  Lathem involved the question of whether the grantor
had filed his suit to reform the deed within the four-year statute of
limitations.  In holding that limitations precluded his suit, the court  found
that Lathem had ample time to learn that the deed did not contain the mineral
reservation.  It is evident from the opinion that, had Lathem filed suit before
limitations had run, his suit for reformation of a deed due to mutual mistake
of the grantee and grantor would have been heard.  The Lathem case is
not applicable.  Here, the Johnsons filed their suit for reformation within the
limitations period.

The
Brights cite Estes v. Republic Nat=l
Bank of Dallas, 450 S.W.2d 397 (Tex. Civ. App.C Dallas 1969), aff=d, 462 S.W.2d 273 (Tex.
1970), and Glasgow v. Hall, 668 S.W.2d 863 (Tex. App.CAustin 1984, writ ref=d n.r.e.), for the
proposition that a party=s
failure to see that the words in his contract express his intentions
constitutes such negligence as will bar his right to reform it.  That
proposition may or may not be applicable in some situations, but the cases do
not apply here.  In this case, the parties agreed in the Sales Contract that
the Johnsons would retain the minerals they then owned of record.  The facts in
Estes and Glasgow differed substantially from the facts in this
case.

In
Estes, the evidence showed that Estes had had extensive financial
transactions with the bank and had given it many promissory notes.  One $30,000
note was secured by a deed of trust that contained a AMother Hubbard@
clause stating that the deed of trust secured all funds advanced to Estes and
all other indebtedness owing or that might become owing to the bank.  Estes
argued that his agreement with the bank was that payment of the $30,000 note
would release his farm but that the bank had refused to release the farm.  The
court found that there was no evidence that the bank had agreed to that
provision.  The court also held that, even if the bank had agreed, Estes still
failed to prove that the failure of the written contract to reflect the true
oral agreement was due to fraud, accident, or mutual mistake.  That is not the
situation here.  The Sales Contract reflected the oral agreement of the
Johnsons and the Brights.  There was no oral agreement that differed from the
written contract.








In
Glasgow, Ken Glasgow entered into an earnest money contract for the
purchase of a home from Belle Hall.  The parties executed the usual title
papers, a note, deed of trust, and warranty deed at closing.  Glasgow claimed
that he did not see a paragraph in the warranty deed that the grantor reserved
the right to adjust the interest rate on the note.  The court found that the
grantor=s reservation
of a right to adjust the interest rate on the note was never discussed before
or at the time of closing.  There were no findings of fact or conclusions of
law requested or filed by the trial court.  Unlike the agreement in the Sales
Contract in the case before us, there was no evidence of an agreement
concerning the interest clause before the deed was executed.  Thus, there was
no basis for reforming the deed in Glasgow.

Appellants
have argued that the Johnsons have not challenged the Sales Contract and that 
failure leads to the demise of the Johnsons=
claim.  The point is also made by the dissent.  However, it is apparent from
the Johnsons=
arguments that they do not want to reform the contract because they believe
that it is the correct statement of the agreement of the parties.  The deed is
the instrument that is not correct, and the Johnsons seek to reform it so that
it might reflect the true agreement of the parties; they make no claim that the
sales contract is an incorrect expression of their agreement with Bright.

Where
a deed does not follow the parties=
agreement, the deed can be reformed.  Thalman, 635 S.W.2d at 413.  The
trial court was correct in granting the Johnsons=
motion for summary judgment and in denying the Brights= motion for summary judgment.

Dwaine
Bright=s Claim

Dwaine
Bright claims that he was a bona fide purchaser for value; therefore, the trial
court should have granted his motion for summary judgment that he owned one-half
of the surface and minerals.  On June 13, 2003, thirteen months after the
Johnsons executed the May 2002 deed to Clarence Bright, Clarence Bright entered
into a written purchase contract with his son, Dwaine Bright, for Dwaine Bright
to purchase an undivided one-half interest in the thirty-three acres (including
the mineral rights).  Dwaine Bright immediately performed under the purchase
contract and fully paid the purchase price.  However, Clarence Bright did not
give a deed to Dwaine.  Instead, the parties in their agreement had stated that
no deed would be filed because their names were so similar:

Both
parties are entering into this agreement without deed recording due to names
listed as Clarence Bright.  Both owner and part owner.

 








The
Johnsons= deed to
Clarence O. Bright was simply to AClarence
Bright.@  Dwaine
Bright could also be referred to as AClarence
Bright.@  Dwaine
Bright testified as to the reason his father did not give him a deed:

Because
my dad bought it in Clarence Bright.  He said, AIf
anything ever happens, it=s
already deeded Clarence Bright and you can go down and sell it, whatever you=ve got to do because your=re Clarence Bright, too, you
know.@  And that=s B he said that=s
why he buys stuff as Clarence Bright, in case I ever need to do something with
it.

 

Dwaine Bright
acknowledged that the document was a contract, not a deed.  He also admitted
that he had not looked at his father=s
May 2, 2002 deed prior to the execution of his purchase agreement.

The
Johnsons filed this suit on March 28, 2006, and their notice of lis pendens on
July 31, 2006.  On September 12, 2006 (effective June 13, 2003), Clarence
Bright executed a ADeed
Without Warranty@ to
Dwaine Bright conveying the one-half interest in the thirty-three acres.  In
August 2007, Clarence Bright executed a ACorrection
Deed Without Warranty@
to correct the September 2006 deed.

Dwaine
Bright argues that he was a bona fide purchaser on June 13, 2003, because he
fully performed that day, received equitable title, and had no notice of the
Johnsons= claim to the
minerals.  He then argues that his equitable title arose by operation of law
without depending on the execution of a deed, citing Cadle Co. v. Harvey,
46 S.W.3d 282, 287 (Tex. App.CFort
Worth 2001, pet. denied); Gaona v. Gonzales, 997 S.W.2d 784, 787 (Tex.
App.CAustin 1999, no
pet.); and Peterson v. Black, 980 S.W.2d 818, 822 (Tex. App.CSan Antonio 1998, no pet.).

These
cases are not persuasive.  We disagree that Dwaine Bright received equitable or
legal title to the minerals pursuant to their 2003 purchase contract.

A
subsequent purchaser ordinarily acquires only the rights, interests, or title
of his predecessor, and unless he shows himself to be a bona fide purchaser, he
can only take such rights that his grantor had.  Hartel v. Dishman, 145
S.W.2d 865 (Tex. 1940).  As a subsequent purchaser, Dwaine Bright would have
acquired only the rights of his father unless he was a bona fide purchaser.








The
Johnsons are correct that a subsequent purchaser is not a bona fide purchaser
if the conveyance is made without warranty.  Woodward v. Ortiz, 237
S.W.2d 286, 291-92 (Tex. 1951)  (purchaser of a quitclaim deed takes with
notice of all defects in the title and equities of third persons); Kidwell
v. Black, 104 S.W.3d 686, 691 (Tex. App.CFort
Worth 2003, pet. denied); Hall v. Tucker, 414 S.W.2d 766, 769 (Tex.
Civ. App.CEastland
1967, writ ref=d
n.r.e.).  Dwaine Bright testified that the June 13, 2003 document was a
purchase contract, not a deed.  There are no words of warranty in the June 2003
document.  There are no words of conveyance, only a statement AI . . . am  selling@ one-half of the interest
as deeded in the Johnsons=
May 2002 deed.  The phrase AI
. . . am selling@ may
have meant AI have
agreed to sell,@
requiring a deed once the son performed.  At best, the document dated June 2003
was a quitclaim deed from Clarence Bright.  In addition, Clarence Bright
executed two subsequent correction deeds Awithout
warranty.@  If
Clarence conveyed an interest in the thirty-three acres in June 2003, which is
doubtful, he conveyed without warranty.  To his credit, Clarence Bright has
acknowledged consistently that he and the Johnsons agreed that the Johnsons
would keep the minerals.

Clarence Bright paid $59,400 for the thirty-three acres,
excluding the minerals.  Dwaine Bright paid Clarence Bright $30,000 for the
undivided one-half interest and understood that amount to be half of what his
father had paid the Johnsons.  The Johnsons point out that the facts in this
case are similar to the facts in Biggs v. Poling, 134 S.W.2d 801 (Tex.
Civ. App.CAmarillo
1939, writ dism=d
judgm=t cor.).  In Biggs,
Poling had been offering for sale one-half of his royalty in small units of
1/1536 of his 1/16 royalty at the rate of $100 per unit.  He entered into a
written contract with Wyrick to convey to Wyrick two units or an undivided
2/1536 of an undivided 1/16 royalty interest for $200.  However, the deed
conveyed 1,536 units.  Wyrick also purchased some other units from Poling. 
Subsequently, Biggs bought units from Poling, Wyrick, and other grantees of
Poling.  The issue in the case was whether Biggs was a bona fide purchaser for
value of 1,534 units (1,536 minus the 2 units that Poling and Wyrick had agreed
on) when his deed from Wyrick conveyed all the right, title and interest that
Wyrick held in the royalty by virtue of the deed to Wyrick from Poling.  The
court held that Biggs was not a bona fide purchaser for two reasons:  his
knowledge of the mistake in the deed from Poling to Wyrick and the assignment
by Wyrick to Biggs Aconstituted
no more than a quitclaim of whatever interest Wyrick had in the royalty.@  Biggs, 134 S.W.2d
at 805.








Under
the reasoning in Biggs, equitable title to the minerals never passed to
Clarence Bright by the Johnsons=
deed dated May 2, 2002, and Clarence Bright received at most only the legal
title to the minerals by mistake in the deed.  Legal title to the minerals was
not paid for by him, and he held them at all times in trust for the Johnsons.  Biggs,
134 S.W.2d at 806.  Dwaine Bright testified that he was Ajust buying half of whatever [Clarence Bright]
had@ in 2003.  He
admitted that he had not looked at the erroneous deed from the Johnsons to his
father; therefore, he cannot claim that he relied on the terms of that deed
when he agreed to purchase a one-half interest in the thirty-three acres and
pay one-half of what his father paid the Johnsons.

The
first two issues of the Brights are overruled.  Because Dwaine Bright did not
prevail on his claim and there are no fact issues raised, the third and fourth
issues are overruled.    

The
Reformed Deed

In
their fifth issue, the Brights contend that the trial court erred in its
reformation of the May 2002 deed from the Johnsons because the reformed deed
did not Astate and
enforce the contract the parties have written.@
Although the trial court=s
reformed deed basically followed paragraph 2(A)(2), we modify the trial
court=s reformed deed
as follows:

RESERVATIONS
FROM CONVEYANCE AND WARRANTY

SAVE and EXCEPT,
and there is hereby reserved unto Grantors, their heirs, successors, and
assigns, all of the oil, gas and other minerals which they now own in
and under and that may be produced from the above described property.

 

This
Court=s Ruling

The
judgment of the trial court is modified, and as modified, affirmed.

 

 

TERRY McCALL

JUSTICE

December 10,
2009

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.  

 








Opinion
filed December 10, 2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of
Appeals

                                                                    __________

 

                                                          No. 11-07-00379-CV

                                                       ________

 

                          CLARENCE
O. BRIGHT AND INTERVENOR

                                 CLARENCE
D. BRIGHT, Appellants

 

                                                             V.

 

                                    FLOY
HUBERT JOHNSON AND

                                   SHIRLEY
A. JOHNSON, Appellees

 



 

                                            On Appeal from
the 266th District Court

 

                                                             Erath
County, Texas

 

                                                    Trial
Court Cause No. CV28227

 



 

                                                   D
I S S E N T I N G   O P I N I O N








I respectfully dissent.  The majority=s ultimate conclusion: that when both
parties to a purchase agreement believe that it conveyed only the surface, then
their deed should transfer title only to the surface is logically sound. 
Furthermore, I find the conflict between Clarence O. Bright=s testimony that he knew the Johnsons
were keeping the minerals and his prayer to this court asking for clear title
to those same minerals problematic.  Consequently, if we were resolving this
issue strictly on equitable principles, I would have no trouble reforming the
deed.  But, because we are not, because the Johnsons do not challenge the
enforceability of the purchase agreement, and because our opinion will create
uncertainty in other title and contractual matters, I respectfully dissent.

My concerns are twofold.  First, I
believe that we are improperly relying upon extrinsic evidence.  The Johnsons
do not ask this court to reform the underlying purchase agreement.  We have
previously held that in such an instance extraneous evidence is inadmissible to
explain the contract=s language.  See Wright v. E.P. Operating Ltd. P=ship, 978 S.W.2d 684, 687 (Tex. App.CEastland 1998, pet. denied).  We
reached this conclusion based upon our responsibility to Acarry into effect the intent of the
parties as expressed [in the agreement].  It is not the intent that the parties
may have had but failed to express in the instrument, but it is the intent that
is expressed by the instrument.@  Id. (citing Pierson v. Sanger, 53 S.W. 1012
(Tex. 1899)).

Even though no challenge is made to
the underlying agreement, our opinion discusses Floy Johnson=s and Clarence Bright=s testimony describing their
subjective intent concerning the reservation of the minerals and their
statements at closing, and we clearly rely upon this testimony to reach our
conclusion.  Not only does this run counter to the parol evidence rule, but
also it is  inconsistent with the merger clause that the parties included in
their agreement[5] B a clause whose operation is not
challenged on appeal.  A merger clause presumes that all prior negotiations and
agreements relating to the transaction have been merged into the contract;
consequently, the contract will be enforced as written and cannot be added to,
varied, or contradicted by parol evidence.  See ISG State Operations, Inc.
v. Nat=l Heritage Ins. Co., 234 S.W.3d 711, 719 (Tex. App.CEastland 2007, pet. denied).  Our
consideration of Floy Johnson=s and Clarence Bright=s testimony is at odds with the terms
of this unchallenged contractual provision.

The majority correctly notes that we
may consider the facts and circumstances surrounding the execution of a
contract.  The limits of this rule are not clearly defined.  However,
commentators have indicated that it is limited to pre-conveyancing issues such
as vocabulary peculiar to the conveyor, utilization of a drafting agent or use
of a form instrument, the skill of the scrivener in the use of language or
terms of art, the prevailing manners of expression at the time, and other
evidence that affected the formulation of the terms of the instrument.  See Bruce
M. Kramer, The Sisyphean Task of Interpreting Mineral Deeds and Leases: An
Encyclopedia of Canons of Construction, 24 Tex. Tech L. Rev. 1, 14 (1993).  But regardless of how the
rule is defined, it is clear that it does not permit proof of the parties= subjective intent.  See Mark
K. Glasser & Keith A. Rowley, On Parol: The Construction and
Interpretation of Written Agreements and the Role of Extrinsic Evidence in
Contract Litigation, 49 Baylor L.
Rev. 657, 669 (1997).  








My apprehension is the effect our
analysis will have on future contracts.  By broadening the scope of surrounding
circumstances, we make it more difficult to determine a contract=s meaning because of the uncertainty
over what now is or is not a permissible evidentiary consideration.  By
disregarding the merger clause, we make it more difficult for contracting
parties to limit the risk of subsequent litigation. We are also potentially
increasing transactional costs.  Assume Clarence Bright had conveyed his
interest to an innocent third party before the dispute arose.  What burden do
we place upon this third party when we undercut the ability to rely upon the
documents in a chain of title?  And how will that increased cost and risk be
absorbed?  I realize that an innocent purchaser has defenses to a title
challenge,[6] but even successful litigation
imposes transactional costs.

My second concern is that our opinion
assigns a meaning to the phrase Aall of record@ that no practitioner would have expected,
and, therefore, a definition that will cause uncertainty in any chain of title
with a document containing that phrase.  We hold that the Johnsons retained all
of their minerals because the contract contained the following phrase:  ATo be additionally retained by
Seller: ALL OF RECORD.@  We reach this conclusion by defining the term Aall of record@ to mean all of the minerals that the
Johnsons owned of record.  I respectfully disagree.  

The phrase Aall of record@ is commonly understood to refer to
documents on file.  For example, in E.P. Operating Ltd. P=ship, 978 S.W.2d at 688, we wrote:

The language stating that the conveyances were made subject
to any and all reservations presently of record including without limitation
that property reserved by the Wrights does not reserve any mineral interest
in Oregon=s predecessors in title, but rather recognizes that
reservations have been made in the past and are in the chain of title.

 

I note that, if the parties had used Aall of record@ to describe the interest outstanding
in third parties, we would have applied its normal meaning.[7] 
I appreciate that there is a difference between an exclusion for interests in
third parties and a reservation of interests to the seller, but this
distinction does not justify defining Aall of record@ differently.[8]








Moreover, by holding that the meaning
of Aall of record@ depends upon its placement in the
contract and the other circumstances of the transaction, we create uncertainty
in chains of title.  The parties should have simply said Aall@ when describing the mineral
interests to be retained by the Johnsons.  But they did not.  They instead
referred to Aall of record.@  The scrivener properly read this to refer to title
documents on file.  Regrettably, this effectively precluded any reservation
because it is difficult to envision a previously filed document describing the
Johnson=s retained mineral interest, but we
should not create uncertainty for others by saying Aall of record@ does not carry its normally accepted
meaning simply because the language chosen by the parties may not have
accurately said what they intended to say.  See Canter v. Lindsey, 575
S.W.2d 331, 334 (Tex. Civ. App.CEl Paso 1978, writ ref=d n.r.e.) (the question is not what
the parties meant to say, but the meaning of what they did say); see also
Dahlberg v. Holden, 238 S.W.2d 699, 701 (Tex. 1951) (courts must construe
contracts as written and may not alter the parties= language by interpolation or
substitution).

For these reasons, I respectfully
dissent.

 

 

RICK STRANGE

December 10, 2009                                                                    JUSTICE

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.









[1]Duhig v. Peavy-Moore Lumber Co., 144 S.W.2d 878 (Tex. 1940).





[2]A careful attorney would have listed in paragraph 2
after A[t]he following property is not included@ the exceptions of the Giesecke interests and the
retention by the Grantors of the minerals and then listed them again in
paragraphs 2(A)(1) and (2).  Here, the parties inserted AN/A@ after A[t]he following property is not included.@





[3]Bright v. Johnson, No. 11-07-00379-CV (Tex. App.CEastland
December 10, 2009, no pet. h.) (dissenting opinion).





[4]An exception is no more than an exception from the
grant; it can operate to the benefit of the grantor to the extent that
ownership in the excepted interest is vested in the grantor and is not
outstanding in another person.  Patrick, 734 S.W.2d at 648 n.1; Pich,
302 S.W.2d at 650.





[5]That clause provided: AAGREEMENT
OF PARTIES:  This contract contains the entire agreement of the parties and
cannot be changed except by their written agreement.@





[6]See Madison v. Gordon, 39 S.W.3d 604, 606 (Tex. 2001) (A bona fide purchaser is one who
acquires property in good faith, for value, and without notice, actual or
constructive, of any third-party claim or interest.  This status is an
affirmative defense to a title dispute.).





[7]I note also that the parties used the term Aas of record@ to
describe the easements to which the grant was subject.  The scrivener treated
this as a reference to the easements on file.  This is consistent with common
practice, and no one complains.





[8]The practical distinction between a reservation and
exception is questionable today.  See, e.g., Pich v. Lankford, 302
S.W.2d 645, 650 (Tex. 1957) (the words Aexception@ and Areservation@ are not strictly synonymous but are often used
interchangeably); Reynolds v. McMan Oil & Gas Co., 11 S.W.2d 778,
781 (Tex. Comm=n App. 1928, holding approved) (for the purpose of
determining the extent of the grant, the distinction between an exception and a
reservation is of no practical importance, for the property excepted or the estate
reserved is never included in the grant); see also 8 Howard R. Williams
& Charles J. Meyers, Oil and Gas Law 336 (2008) (the distinction
between exceptions and reservations has lost most of its importance in
contemporary law).